PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2695
_____

IN RE: VISTACARE GROUP, LLC, et al.,

Debtors

WILLIAM G. SCHWAB, Trustee,

Appellant
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 3-10-cv-02522)
District Judge: Honorable James M. Munley
_____

Argued January 24, 2012
Before: McKEE, *Chief Judge*, FISHER and GREENAWAY,
JR., *Circuit Judges*.

(Filed: May 4, 2012)

Frank J. Lavery (Argued)
Sunshine J. Thomas
Lavery, Faherty, Young & Patterson
225 Market Street, Suite 304
P.O. Box 1245
Harrisburg, PA  17108
        *Counsel for Appellant*

Barry W. Sawtelle (Argued)
Kozloff Stoudt
2640 Westview Drive
P.O. Box 6286
Wyomissing, PA  19610
        *Counsel for Appellee*

John H. Doran
Doran & Doran
69 Public Square
700 Northeastern Bank Building
Wilkes-Barre, PA  18701

Barry A. Solodky
Blakinger, Byler & Thomas
28 Penn Square
Lancaster, PA  17603
        *Counsel for Debtor*

Martin P. Sheehan (Argued)
Sheehan & Nugent
41 Fifteenth Street
Wheeling, WV  26003
        *Counsel for Amicus Appellant,*
        *National Association of Bankruptcy Trustees*

———

OPINION OF THE COURT

———

FISHER, *Circuit Judge*.

        William Schwab appeals from an order of the District Court affirming an order of the Bankruptcy Court granting CGL, LLC's motion for leave to sue Schwab in the Lancaster County, Pennsylvania, Court of Common Pleas for actions taken in his capacity as trustee of the bankruptcy estate of VistaCare Group, LLC.  The primary question on appeal is whether the *Barton* doctrine, which requires a party seeking to sue a court-appointed receiver, to first obtain leave of the appointing court, applies to bankruptcy trustees in light of changes in the bankruptcy laws.  For the reasons set forth below, we hold that (1) the *Barton* doctrine continues to apply to bankruptcy trustees and (2) the Bankruptcy Court's decision to grant leave in this case was proper.  Therefore, we will affirm.

I.

        William Schwab ("the Trustee") was appointed as the Chapter 7 trustee of the bankruptcy estate of VistaCare

3

Group, LLC ("VistaCare").  VistaCare's bankruptcy estate included Parkside Manor Retirement Community ("Parkside"), a 12.2 acre parcel of land located in Lancaster County, Pennsylvania.  The parcel consisted of forty-five lots, forty-four of which were subdivided and zoned for mobile homes.  The forty-fifth lot ("Lot 45") contained a four-story retirement and assisted living facility.  All of the lots shared common infrastructure, including roads, sewer lines, storm lines, and water lines.  The lots were subject to a subdivision plan, which contained various restrictions, including "Restriction No. 1," which provided:  "Fee title to the Lot shown on this plan will not be transferred to the parties having residences constructed upon the said Lots, but title will remain in the developer, his heirs and assigns."  The subdivision plan was approved by East Cocalico Township ("the Township") and recorded in the Office of the Recorder of Deeds of Lancaster County.

On July 25, 2008, the Trustee filed a motion in the U.S. Bankruptcy Court for the Middle District of Pennsylvania, seeking authorization to sell Parkside, either as one parcel, or as two separate parcels, with one parcel consisting of Lot 45 and the other containing the remaining forty-four lots.  The Trustee's motion acknowledged the existence of Restriction No. 1 and stated that a sale of Parkside as two separate parcels "would be contingent upon approval by East Cocalico Township of the modification of Restriction No. 1 to allow the personal care home and the mobile home park to be separated."  The Bankruptcy Court granted the motion on August 21, 2008.  On September 27, 2008, after a public auction, CGL, LLC ("CGL") entered into

4

an agreement for the purchase of Lot 45. On November 14, 2008, the Township Solicitor confirmed that Restriction No. 1 did not prevent the sale of Lot 45, and in an order dated March 10, 2009, the Bankruptcy Court stated, "[t]his sale shall . . . be free and clear of Restriction #1 of the Subdivision Plan." The sale of Lot 45 closed on May 8, 2009.

During this time, the Trustee had determined that it was necessary to liquidate the remaining forty-four lots on Parkside. While making preparations to sell the lots, the Trustee discovered that some residents in the mobile home park had permanently affixed their mobile homes to the land. The Trustee then instituted adversary actions against these residents. To resolve the adversary actions, the Trustee and the residents agreed that the lots could be sold to the residents, despite Restriction No. 1's prohibition on sales to individuals "having residences constructed" on the land. Most of the lots were subsequently sold to the individual residents. For each sale, the Trustee filed a Report of Sale with the Bankruptcy Court. On December 14, 2009, the Trustee and the Township entered into an agreement abrogating Restriction No. 1 as to the forty-four individual lots. CGL was not a party to that agreement.

On July 30, 2010, CGL filed in the Bankruptcy Court a motion for leave to file suit against the Trustee in the Lancaster County, Pennsylvania, Court of Common Pleas. CGL alleged that the sales of the individual lots were unlawful and that such sales damaged its property interests in Lot 45. CGL further alleged that the December 14 agreement between the Trustee and the Township abrogating Restriction No. 1 deprived CGL of its property rights without notice and

without due process of law. On August 12, 2010, the Trustee filed a response, in which he asserted that under *Barton v. Barbour*, 104 U.S. 126 (1881), CGL could not proceed in state court without the permission of the Bankruptcy Court. The Trustee urged the Bankruptcy Court to refuse to give permission in this case, arguing that CGL's proposed state law claims were "frivolous." The Trustee also asserted various "affirmative defenses."

On October 21, 2010, the Bankruptcy Court held a hearing on CGL's motion, in which Grant Wise, the sole owner of CGL, and the Trustee, testified. During the hearing, the Bankruptcy Court expressed doubt as to whether CGL needed its permission to file suit against the Trustee in state court, opining that *Barton* was "antiquated and probably not controlling in the Third Circuit." Nevertheless, the Bankruptcy Court went on to determine whether it should grant leave in this case. After hearing arguments, the Bankruptcy Court concluded that although it could not predict whether CGL would be successful on its state law claims, such claims were not "on [their] surface, frivolous." The Bankruptcy Court added that state court was the appropriate forum to resolve the dispute given that state courts "probably ha[d] an expertise in th[e] area." On October 22, 2010, the Bankruptcy Court issued an order formally granting CGL's motion for leave.

The Trustee appealed to the U.S. District Court for the Middle District of Pennsylvania. On May 26, 2011, the District Court affirmed the Bankruptcy Court's order. *In re Vistacare Grp., LLC*, No. 10-2522, 2011 WL 2111997, at *5 (M.D. Pa. May 26, 2011). The District Court declined to

address the Trustee's claim that the Bankruptcy Court erroneously found that *Barton* did not apply, reasoning that although the Bankruptcy Court questioned *Barton*'s continued validity, the Bankruptcy Court did, in fact, examine whether it should approve CGL's motion for leave. *Id.* at *3. The District Court then concluded that the Bankruptcy Court's decision to grant leave was proper. *Id.* at *3-4. The Trustee filed a timely notice of appeal.[1]

## II.

The Bankruptcy Court had jurisdiction under 28 U.S.C. § 157(b). The District Court had jurisdiction over the appeal from the Bankruptcy Court under 28 U.S.C. § 158(a), and we have jurisdiction under 28 U.S.C. §§ 158(d) and 1291. On appeal, "we 'stand in the shoes' of the District Court and review the Bankruptcy Court's decision." *In re Global Indus. Techs., Inc.*, 645 F.3d 201, 209 (3d Cir. 2011) (en banc) (citations omitted). We review the Bankruptcy Court's legal determinations *de novo*, and its factual findings for clear error. *Id.* We review a bankruptcy court's decision to grant a motion for leave to sue a trustee under the deferential abuse of discretion standard. *In re Linton*, 136 F.3d 544, 546 (7th

---

[1] On June 24, 2011, while this appeal was pending, CGL filed suit against the Trustee in the Lancaster County Court of Common Pleas. On July 20, 2011, the case was removed to the U.S. District Court for the Eastern District of Pennsylvania, and is currently pending in that court. *CGL, LLC v. Schwab*, Civ. No. 11-4593.

Cir. 1998); *In re Beck Indus., Inc.*, 725 F.2d 880, 889 (2d Cir. 1984).

III.

A.

The first question presented by this case is whether a party must first obtain leave of the bankruptcy court before it brings an action in another forum against a bankruptcy trustee for acts done in the trustee's official capacity. We now join our sister circuits in holding that, under the doctrine established in *Barton v. Barbour*, leave of the bankruptcy court is required before instituting such an action. *See*, *e.g.*, *Lawrence v. Goldberg*, 573 F.3d 1265, 1269 (11th Cir. 2009) (holding that the *Barton* doctrine is applicable to bankruptcy trustees); *In re Crown Vantage, Inc.*, 421 F.3d 963, 970 (9th Cir. 2005) (same); *Muratore v. Darr*, 375 F.3d 140, 143 (1st Cir. 2004) (same); *In re Linton*, 136 F.3d at 545-46 (same); *In re Lehal Realty Assocs.*, 101 F.3d 272, 276 (2d Cir. 1996) (same); *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993) (same); *Anderson v. United States*, 520 F.2d 1027, 1029 (5th Cir. 1975) (same).[2]

Established by the Supreme Court over a century ago, the *Barton* doctrine provides that "before suit is brought against a receiver[,] leave of the court by which he was

---

[2] The U.S. Courts of Appeals for the Fourth, Eighth, Tenth, and District of Columbia Circuits have not spoken on the issue, at least not in published precedential opinions.

8

appointed must be obtained." 104 U.S. at 128 (citing *Davis v. Gray*, 83 U.S. 203 (1872)). The *Barton* Court explained that a court approval requirement was necessary to ensure a consistent and equitable administration of the receivership property. *Id.* at 128-29. Because a judgment against the receiver in his capacity as receiver would be satisfied out of the receivership property, the effect of a suit brought without leave to recover such a judgment would be "to take the property of the trust from [the receiver's] hands and apply it to the payment of the plaintiff's claim, without regard to the rights of other creditors or the orders of the court which [was] administering the trust property." *Id.* In other words, the party bringing suit would be able to "obtain [an] advantage over the other claimants" as to the distribution of "the assets in the receiver's hands." *Id.* at 128. The Court further observed that if the judgment "were recovered outside the territorial jurisdiction" of the court administering the trust assets (i.e., the appointing court), that court would be "impotent" to prevent enforcement of the judgment. *Id.* Thus, requiring a party with claims against the receiver to obtain permission from the appointing court before filing suit in another jurisdiction would prevent the "usurpation of the powers and duties which belonged exclusively to [the appointing] court" and protect "the duty of that court to distribute the trust assets to creditors equitably and according to their respective priorities." *Id.* at 136.

As the Court explained ten years later in *McNulta v. Lochridge*, 141 U.S. 327, 330 (1891), the *Barton* doctrine was not dependent on any federal statute, but instead was based on principles of common law. Accordingly, after *Barton*, courts

9

in "[a]n unbroken line of cases," *In re Linton*, 136 F.3d at 545 (citations omitted), imposed as a matter of federal common law, a requirement that a party seeking to sue an equity receiver must first obtain the permission of the appointing court. *See*, *e.g.*, *Porter v. Sabin*, 149 U.S. 473, 478-80 (1893); *Merryweather v. United States*, 12 F.2d 407, 408 (9th Cir. 1926); *Vass v. Conron Bros. Co.*, 59 F.2d 969, 970-71 (2d Cir. 1932) (L. Hand, J.). Absent such permission, no other court would have jurisdiction to hear the suit. *Porter*, 149 U.S. at 479 ("It is for [the appointing] court, in its discretion, to decide whether it will determine for itself all claims of or against the receiver, or will allow them to be litigated elsewhere."); *Barton*, 104 U.S. at 136-37. Although *Barton* involved an equity receiver, subsequent courts extended the *Barton* doctrine to bankruptcy trustees, reasoning that much like a receiver, a trustee was appointed by the court to oversee the debtor's estate, and therefore was "an officer of the court" whose "possession [was] protected because it [was] the court's." *Vass*, 59 F.2d at 970 (citations omitted). Although we have never explicitly held that *Barton*'s leave-of-court requirement applies to bankruptcy trustees, in *In re National Molding Co.*, 230 F.2d 69, 70-71 (3d Cir. 1956), we examined whether a bankruptcy referee erred in denying a party's motion for leave to sue a trustee in a "plenary action" in New Jersey state court. Thus, implicit in our decision was that a party seeking to sue a trustee for acts taken in his official capacity must obtain permission from the court overseeing the bankruptcy proceeding. *See id.*

In this case, although the Bankruptcy Court did not definitively hold that the *Barton* doctrine did not apply to

10

bankruptcy trustees, during the hearing on CGL's motion for leave, the Bankruptcy Court stated that the doctrine was "antiquated and probably not controlling in the Third Circuit." The Bankruptcy Court opined that although courts may have applied the *Barton* doctrine to bankruptcy trustees under the bankruptcy system in place before 1978, the Bankruptcy Reform Act of 1978, commonly known as the Bankruptcy Code, 11 U.S.C. §§ 101-1527 ("the Bankruptcy Code" or "the Code"), fundamentally overhauled the bankruptcy laws, and in the process, raised doubts about the continued applicability of *Barton*. During the hearing, the Bankruptcy Judge echoed the concerns he had previously raised in *In re Lambert*, 438 B.R. 523 (Bankr. M.D. Pa. 2010). In that case, the court concluded that the Bankruptcy Code had superseded the common law *Barton* doctrine. *Id.* at 526. We disagree; as we explain below, the *Barton* doctrine has continuing validity.

Although Congress has never expressly codified the *Barton* doctrine, implicit in a provision of the Judicial Code, 28 U.S.C. § 959(a), is a general rule that a party seeking to sue a receiver or trustee must first obtain permission from the appointing court. Section 959(a) provides:

> "Trustees, receivers or managers of any property, including debtors in possession, may be sued, without leave of the court appointing them, with respect to any of their acts or transactions *in carrying on business connected with such property*. Such actions shall be subject to the general equity power of such court so far as the same may be necessary to the

11

> ends of justice, but this shall not deprive a litigant of his right to trial by jury."

28 U.S.C. § 959(a) (emphasis added).[3]

This provision, originally enacted in 1887, just six years after *Barton*, seems to have been in direct response to the concerns raised in Justice Miller's dissent in *Barton*. Criticizing the scope of the Court's holding, Justice Miller noted that the role of a receiver had expanded well beyond winding up the affairs of a defunct corporation and liquidating its assets, to in some situations, essentially

---

[3] The original provision applied only to "receivers" and "managers" of property. Act of Congress of Mar. 3, 1911, ch. 231, §§ 65, 66, 36 Stat. 1104 (repealed 1948). In 1948, Congress amended the statute and extended it to "trustees" and "debtors in possession." 62 Stat. 926 (June 25, 1948) (codified at 28 U.S.C. § 959(a)).

running the company.[4]  *Barton*, 104 U.S. at 137-38 (Miller, J., dissenting).  Justice Miller opined that it would be fundamentally unfair to require a party to obtain court permission to pursue claims against the receiver arising out of the receiver's operation of the business.  *Id.* at 138.  Such a system would render the everyday operations of the corporation "exempt[] from the operation of common law" and deprive potential litigants of the right "to have their complaints tried by [a] jury or by the ordinary courts of justice."  *Id.*  Rather, a party's only remedy against the corporation would be in "the hands of . . . the court which appointed [the receiver]."  *Id.*  In contrast, Justice Miller agreed with the majority that "[w]hen a receiver [was] appointed to wind up a defunct corporation . . . [and] his sole

[4] Justice Miller was particularly worried about the potential effect of the majority's holding on suits against railroad corporations.  *Barton v. Barbour*, 104 U.S. 126, 137-38 (1881) (Miller, J., dissenting).  He noted that it had become common for a railroad to place its daily operations in the hands of a receiver.  *Id.*  The receiver would then "take[] the property out of the hands of its owner, operate[] the road in his own way, with an occasional suggestion from the court, which he recognize[d] as a sort of partner in the business."  *Id.* at 138.  Although the receiver would pay some of the corporation's debts, he would also enter into new contracts, incur new obligations, and frequently add to the corporation's debts.  *Id.*  For all intents and purposes, the receiver was "performing the functions of a common carrier of goods and passengers."  *Id.*

13

duty [was] to convert the property into a fund for the payment of debts, . . . a very strong reason exist[ed] why the court which appointed him should alone control him in the performance of his duty." *Id.*

When Congress enacts legislation, it is presumed to act with knowledge of the "existing law and judicial concepts." *Farina v. Nokia Inc.*, 625 F.3d 97, 112 (3d Cir. 2010) (citation omitted). As Judge Learned Hand recognized, it is readily apparent that Congress shared Justice Miller's concerns and, in enacting § 959(a), intended to create an exception to the *Barton* rule for situations where the receiver was "continu[ing]" the debtor's business, rather than simply administering the estate. *See Vass*, 59 F.2d at 971 (explaining that the provision "was apparently passed to meet the doctrine of *Barton v. Barbour*"). Our sister circuits have consistently recognized § 959(a) as a limited exception to *Barton*. *See*, *e.g.*, *In re Crown Vantage, Inc.*, 421 F.3d at 971; *Muratore*, 375 F.3d at 143; *In re DeLorean Motor Co.*, 991 F.2d at 1240-41. We agree. Congress's creation of what appears to be a statutory exception to a common law rule strongly suggests its acknowledgement and acceptance of the general rule. Mindful that "Congress 'does not, one might say, hide elephants in mouseholes,'" *Bilksi v. Kappos*, 130 S. Ct. 3218, 3250 (2010) (Stevens, J., concurring in judgment) (quoting *Whitman v. Am. Trucking Assns., Inc.*, 531 U.S. 457, 468 (2001)), we believe that had Congress intended to abrogate *Barton* in its entirety, it would have done so explicitly. Especially when viewed in light of Justice Miller's dissent in *Barton*, it is abundantly clear that Congress intended to narrow the scope of the *Barton* doctrine by creating an

14

exception for situations in which the policy rationales underlying the Court's creation of the doctrine were not applicable. Under § 959(a), where a trustee or receiver is actually operating the business, and the acts complained of involved the trustee's "conducting the debtor's business in the ordinary sense of the words or [his] pursuing that business as an operating enterprise," an aggrieved party need not seek permission from the appointing court before filing suit in another forum. *In re Crown Vantage, Inc.*, 421 F.3d at 971-72 (citation omitted). In contrast, where a trustee "acting in his official capacity conducts no business connected with the property other than to perform administrative tasks necessarily incident to the consolidation, preservation, and liquidation of assets in the debtor's estate," § 959(a) does not apply, and leave of court is still required before filing suit against the trustee. *In re Lehal Realty Assocs.*, 101 F.3d at 276 (citations omitted).[5]

Significantly, although the Bankruptcy Code overhauled the bankruptcy system and replaced many of the bankruptcy statutes, § 959(a) was left intact. Although 28 U.S.C. § 959 is technically part of the Judicial Code, we note that the other subsection in § 959, subsection (b), was

---

[5] It is important to note that 28 U.S.C. § 959(a) does not apply here. VistaCare was not in the business of buying and selling real estate. Thus, in selling the lots on the Parkside property, the Trustee was not carrying on VistaCare's business, but rather performing his duty as trustee to liquidate the assets of the estate.

15

amended when Congress enacted the Bankruptcy Code.[6] Thus, Congress was clearly aware of § 959 when it adopted the Code, and its decision to leave subsection (a) intact is telling. As the Supreme Court has explained, "[w]hen Congress amends the bankruptcy laws, it does not write 'on a clean slate.'" *Dewsnup v. Timm*, 502 U.S. 410, 419 (1992) (citation omitted). Accordingly, courts should be "reluctant to accept arguments that would interpret the Code . . . to effect a major change in pre-Code practice," absent at least some suggestion in the legislative history that such a change was intended. *Id.* (citations omitted). Here, we can find no indication that Congress intended to abrogate the *Barton* doctrine. Rather, its decision to leave § 959(a), the exception

_____

[6] Section 959(b) of Title 28 of the U.S. Code provides:

Except as provided in section 1166 of title 11, a trustee, receiver or manager appointed in any cause pending in any court of the United States, including a debtor in possession, shall manage and operate the property in his possession as such trustee, receiver or manager according to the requirements of the valid laws of the State in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof.

In 1978, Congress substituted "Except as provided in section 1166 of title 11, a trustee" for "A trustee." Act of Congress of Nov. 6, 1978, Pub. L. 95-958.

to *Barton*, intact strongly suggests that *Barton*'s general rule remains valid.

Moreover, the policies underlying the *Barton* doctrine continue to apply with full force to bankruptcy proceedings. Upon the filing of a bankruptcy petition, a bankruptcy estate is created, which consists of, with certain exceptions, all of the debtor's legal or equitable interests in property, wherever located and by whomever held. 11 U.S.C. § 541(a). The district court in which a bankruptcy case is commenced has exclusive jurisdiction over all of the property of the estate, 28 U.S.C. § 1334(e)(1), and the bankruptcy court within such district may hear and determine all cases under the Bankruptcy Code and all "core proceedings" arising under the Code, 28 U.S.C. § 157(b)(1). Because a judgment against the trustee, whether ultimately satisfied out of the assets of the estate or out of the trustee's pockets, may affect the administration of the estate, "[t]he requirement of uniform application of bankruptcy law dictates that all legal proceedings that affect the administration of the bankruptcy estate" be either brought in the bankruptcy court or with the permission of the bankruptcy court. *In re Crown Vantage, Inc.*, 421 F.3d at 971. "If debtors, creditors, defendants in adversary proceedings, and other parties to a bankruptcy proceeding could sue the trustee in state court for damages arising out of the conduct of the proceeding, [the state] court would have the practical power to turn bankruptcy losers into

17

bankruptcy winners, and vice versa." *In re Linton*, 136 F.3d at 546.[7]

Although the Bankruptcy Court did not address the impact of § 959(a), it opined that several other changes implemented by the Code have raised questions about the continued applicability of the *Barton* doctrine. First, the Bankruptcy Court noted that under the Code, trustees are no longer appointed by the bankruptcy court, but instead are

[7] Citing *McNulta v. Lochridge*, 141 U.S. 327 (1891), and *Reading Co. v. Brown*, 391 U.S. 471 (1968), the Trustee argues that a suit against a trustee based on acts taken in his official capacity will always be a suit against the estate, satisfied out of the assets of the estate. We disagree with the Trustee's interpretation of *McNulta* and *Brown* insofar as he argues that those cases established a categorical rule that judgments against a trustee will always be satisfied out of the assets of the estate. In *Brown*, the Supreme Court acknowledged its previous statement in *McNulta* that actions against a receiver "are official and not personal, and judgments against him as receiver are payable only from the funds in his hands," but classified that statement as dicta. *Brown*, 391 U.S. at 477 n.7 (quoting *McNulta*, 141 U.S. at 332). The *Brown* Court explained that it would be wrong to infer from *McNulta* that "an action against the receiver personally . . . would never lie under any circumstances." *Id.* Therefore, like the Bankruptcy Court, we express no opinion as to whether a judgment against the Trustee in this case will ultimately be satisfied out of the assets of the estate or out of the Trustee's pockets.

18

appointed by a United States Trustee. Second, the Bankruptcy Court observed that 11 U.S.C. § 362 provides for the automatic stay of all suits and lien enforcement efforts against the debtor or the debtor's estate, thus making it more difficult for a third party to drain the assets of the estate. Finally, although the Bankruptcy Judge did not raise this concern here, in his decision in *In re Lambert*, he noted that 11 U.S.C. § 323(b) provides that a trustee "has capacity to sue and be sued," but says nothing about a leave-of-court requirement. 438 B.R. at 525-26. We will discuss these points in turn.

We first address the contention that changes in the way in which trustees are appointed undermined the basis for the *Barton* doctrine. Under the Bankruptcy Act of 1898, ch. 541, 30 Stat. 544 (1898) (superseded 1978) ("the Bankruptcy Act"), and the Chandler Act, ch. 575, 52 Stat. 840 (1938) (superseded 1978), the predecessors to the Code, trustees were appointed by the courts. However, when the Code was adopted in 1978, a pilot program was initiated, under which the power to appoint bankruptcy trustees was vested in the United States Department of Justice. 2 Norton Bankr. L. & Prac. 3d § 26:1 (3d ed. 2012). The program was "designed to remove the . . . awkward relationship between bankruptcy judges and private trustees, whom they appoint[ed], which ha[d] generated great disrespect for the bankruptcy system." H.R. Rep. No. 95-595, at 113 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6074. In 1986, Congress added 28 U.S.C. § 581, which established the United States Trustee System on a national basis. Pub. L. No. 99-554, 100 Stat.

19

3088, 3091 (1986).[8]  Under the current system, the U.S. Attorney General is charged with the appointment of United States Trustees, who, among other things, "establish, maintain, and supervise [] panel[s] of private trustees that are eligible and available to serve as trustees in cases under chapter 7."  28 U.S.C. § 586(a)(1).  Upon the commencement of a Chapter 7 case, the U.S. Trustee selects an individual from the panel to serve as the trustee in that case.  11 U.S.C. § 701(a)(1).[9]

CGL argues that because the *Barton* doctrine specifically requires leave of the *appointing* court, and there is no appointing court under the modern bankruptcy system, *Barton* is no longer valid.  We disagree.  A bankruptcy trustee is the "statutory successor to the equity receiver" and "[j]ust like an equity receiver, a trustee in bankruptcy is working in effect" for the court overseeing the bankruptcy proceeding, "administering property that has come under the court's control by virtue of the Bankruptcy Code."  *In re Linton*, 136

---

[8] The only exceptions are Alabama and North Carolina, which are not part of the United States Trustee System, and in the judicial districts in those states, bankruptcy courts retain the power of appointment and direct supervision. 2 Norton. Bankr. L. & Prac. 3d § 26:1 (3d ed. 2012).

[9] Under 11 U.S.C. § 701, a member of the panel of private trustees is initially appointed to serve on an interim basis.  Eligible creditors subsequently have an opportunity to elect a trustee, and if no trustee is elected, the interim trustee serves as trustee in the case.  11 U.S.C. § 702.

F.3d at 545. In changing the way in which trustees are appointed, Congress did not alter the fundamental role of the bankruptcy trustee as a fiduciary, overseen by the bankruptcy court. Although U.S. Trustees now "aid[] bankruptcy judges in monitoring certain aspects of bankruptcy proceedings," *United Artists Theatre Co. v. Walton*, 315 F.3d 217, 225 (3d Cir. 2003) (citations omitted), the bankruptcy court is the entity primarily responsible for authorizing acts by the trustee. *See*, *e.g.*, 11 U.S.C. § 363(b)(1) (providing that sale or other disposition of property by the trustee is subject to review by the bankruptcy court); Fed. R. Bankr. P. 6004(c) (requiring trustee to file with the bankruptcy court a motion to sell property free and clear of all liens). Additionally, bankruptcy courts retain the ability to remove a trustee (other than the U.S. Trustee) for cause. 11 U.S.C. § 324(a). We therefore disagree with the Bankruptcy Court's statement that a trustee is "really just another advocate that appear[s] before" it. The trustee remains, for all intents and purposes, an officer of the bankruptcy court. Thus, the fact that bankruptcy trustees are no longer appointed by the court does not persuade us that the *Barton* doctrine has been superseded by statute.

The Bankruptcy Court further opined that the *Barton* doctrine is no longer necessary in light of 11 U.S.C. § 362, which provides for the automatic stay of any attempt to collect against property of the estate. We disagree. First, as the U.S. Court of Appeals for the Seventh Circuit explained in *In re Linton*, there are several rationales for the *Barton* doctrine unrelated to the concern that a suit against the trustee could directly threaten the assets of the estate. 136 F.3d at

21

545-46. If a trustee is burdened by having to defend against suits in other courts, the trustee's actions on behalf of the bankruptcy court, the estate, and the estate's creditors will likely be impeded. *Id.* at 545. Moreover, without a court approval requirement, trusteeship would become a "more irksome duty," thereby discouraging qualified people from serving as trustees. *Id.* (noting that trustees would likely have to pay higher malpractice premiums). Finally, requiring prospective plaintiffs to set forth to the bankruptcy court the basis of their claims against the trustee would allow the bankruptcy court to monitor the work of the trustee more effectively, and ensure that the trustee is satisfying his obligations. *Id.*

Second, assuming a suit against a bankruptcy trustee in another forum would jeopardize the assets of the estate, Congress's adoption of § 362 still does not convince us that it intended to abrogate *Barton*.[10] The power of a court to stay collection efforts against the debtor has always been an integral part of bankruptcy law. *See* 1A Collier on Bankruptcy § 11, at 130 (1898 ed.) ("The power to stay suits concerning the person or property of the bankrupt is essential to the orderly administration of a bankruptcy law."). Mindful of the Supreme Court's admonition that we should not read a

---

[10] We emphasize that we are *assuming*, for the purpose of addressing the Bankruptcy Court's point, that the assets of the estate will be affected. As we noted in Footnote 7, *supra*, we express no opinion as to whether a judgment against the Trustee in this case will be satisfied out of the assets of the estate.

22

Bankruptcy Code provision to "effect a major change in pre-Code practice" absent clear congressional intent, *Dewsnup*, 502 U.S. at 419, we will briefly review the history of the automatic stay in bankruptcy.

Section 11 of the Bankruptcy Act of 1898 provided that a lawsuit pending when a bankruptcy petition was filed would be stayed if the suit was based on a claim that would be subject to discharge. § 11, 30 Stat. at 549. However, the Act's stay provision was not "self-executing" and therefore some affirmative action by the court was required to invoke the stay. Frank Kennedy, *The Automatic Stay in Bankruptcy*, 11 U. Mich. J.L. Ref. 175, 184-85 (1978) (citations omitted). In 1938, Congress passed the Chandler Act, which provided for automatic stays under Chapters X and XII. §§ 148, 428, 52 Stat. at 888, 918. There was confusion, however, regarding the scope of the Chandler Act's provisions, including whether they applied to other chapters of the Bankruptcy Act. Mark Shaiken & Cindi Woolery, *Automatic Stay Litigation in Bankruptcy* 3 (1996). Therefore, when the former Federal Rules of Bankruptcy Procedure were adopted, a separate automatic stay provision was included for each chapter. *See* Fed. R. Bankr. P. 10-601(a) (1977) (superseded 1978) ("A petition filed under [Chapter X] shall operate as a stay of the commencement or the continuation of any court or other proceeding against the debtor, or the enforcement of any judgment against it, or of any act or the commencement or continuation of any court proceeding to enforce any lien against its property . . . ."); Fed. R. Bankr. P. 11-44(a) (1977) (superseded 1978) (same for Chapter XI); Fed. R. Bankr. P. 12-43(a) (1977) (superseded 1978) (same for Chapter XII);

23

Fed. R. Bankr. P. 13-401(a) (1977) (superseded 1978) (same for Chapter XIII).

In 1978, as part of the new Bankruptcy Code, Congress enacted 11 U.S.C. § 362, which provides that upon the filing of a voluntary or involuntary case, all suits and lien enforcement efforts against the debtor or the debtor's estate shall be automatically enjoined, subject to certain exceptions for repeat bankruptcy filers. The legislative history accompanying § 362 explains that its primary purpose was to give the debtor a "breathing spell" from creditors, to allow the debtor to begin the process of discharging his debts, and where applicable, to develop a repayment or reorganization plan. H.R. Rep. No. 95-595, at 174, *reprinted in* 1978 U.S.C.C.A.N. at 6135. Section 362 was also intended to protect creditors by preventing one creditor from obtaining payment of its claims to the detriment of others. *Id.* The legislative history noted that the existing automatic stay provisions were "inadequate, both from the standpoint of the debtor . . . and of the creditor." *Id.* Therefore, § 362 "expand[ed] coverage in some areas, reduce[d] it in others, and clarifie[d] many uncertain aspects of the [old] provisions." *Id.* Given that the applicability of the *Barton* doctrine under the pre-Code system has not been questioned, despite the existence of automatic stay provisions under the Bankruptcy Act and the former Rules of Bankruptcy Procedure, we decline to interpret the changes implemented

24

by § 362 as eliminating the long-standing common law *Barton* doctrine.[11]

Finally, we address CGL's argument that because 11 U.S.C. § 323(b) provides that a trustee has the "capacity to sue and be sued," but mentions no leave-of-court requirement, no such requirement exists. In *In re Lambert*, the bankruptcy court stated, "[s]hould Congress have wanted to subject lawsuits against the trustee to preliminary court approval, it clearly could have used language that [it] inserted in multiple other provisions directing the need for court authorization." 438 B.R. at 525-26 (citations omitted); *see also In re Reich*, 54 B.R. 995, 997 (Bankr. E.D. Mich. 1985) (concluding that because court approval is not mentioned as a prerequisite, "[t]he implication is that none is required"). This is an overly simplistic analysis. "As the Supreme Court has often noted, 'statutory construction is a holistic

---

[11] We also note that the availability of one mechanism to protect against depletion of the assets of the bankruptcy estate does not necessarily foreclose others. Bankruptcy courts have broad powers (in addition to 11 U.S.C. § 362) to protect the property of the estate. For example, under 11 U.S.C. § 105(a), a bankruptcy court may issue injunctive relief "where parties are pursuing actions pending in other courts that threaten the integrity of a bankrupt's estate." *In re DeLorean Motor Co.*, 991 F.2d 1236, 1242 (6th Cir. 1993) (internal marks and citations omitted). Here, the Bankruptcy Court left open the possibility that it could enjoin CGL's proposed state court case "should property of the estate be threatened."

25

endeavor,' and this is especially true of the Bankruptcy Code." *In re Cybergenics Corp.*, 330 F.3d 548, 559 (3d Cir. 2003) (en banc) (quoting *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988)). We must "not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy." *In re Price*, 370 F.3d 362, 369 (3d Cir. 2004) (quoting *Kelly v. Robinson*, 479 U.S. 36, 43 (1986)) (additional citations omitted). Here, this requires us to look at Federal Rule of Bankruptcy Procedure 6009, which provides: "[w]ith or without court approval, the trustee . . . may prosecute or may enter an appearance and defend any pending action or proceeding by or against the debtor, or commence and prosecute any action or proceeding in behalf of the estate before any tribunal." This rule establishes only that a trustee may, with or without court approval, act as a representative of the estate in litigation; it does not address the circumstances under which a third party may bring suit against the trustee. *See id.* "When the interpretation of federal statutes fails to yield specific answers to procedural issues, federal courts have implicit authority to supply the answers." *In re Linton*, 136 F.3d at 545. Thus, although § 323(b) recognizes that a trustee has the capacity to be sued, the procedures which must be followed before commencing any suit against the trustee not otherwise authorized by 28 U.S.C. § 959(a) have been left to case law. *See In re Kashani*, 190 B.R. 875, 884 n.9 (B.A.P. 9th Cir. 1995) (explaining that § 323(b) "merely indicates the proper party to sue for purposes of standing"). We therefore reject CGL's argument that the text of § 323(b) indicates a congressional intent to abrogate the *Barton* doctrine.

26

In sum, we hold that the *Barton* doctrine remains valid, and therefore, subject to the exception in § 959(a), a party must first obtain leave of the bankruptcy court before it brings an action in another forum against a bankruptcy trustee for acts done in the trustee's official capacity.

B.

Although the Bankruptcy Court expressed skepticism as to whether *Barton* applied, it nevertheless held a hearing on CGL's motion for leave,[12] and ultimately granted the motion. The Bankruptcy Court therefore complied with *Barton* and we will consider whether its decision to grant CGL's motion for leave constituted an abuse of discretion. *In re Linton*, 136 F.3d at 546; *In re Beck Indus.*, 725 F.2d at 889. Under the deferential abuse of discretion standard, we will reverse "only where the . . . court's decision is arbitrary, fanciful, or clearly unreasonable—in short, where no reasonable person would adopt the . . . court's view." *United States v. Green*, 617 F.3d 233, 239 (3d Cir. 2010) (internal marks and citation omitted).

A party seeking leave of court to sue a trustee "must make a prima facie case against the trustee, showing that its claim is not without foundation." *In re Nat'l Molding Co.*, 230 F.2d at 71 (citations omitted). Although, as CGL

---

[12] Our holding should not be read as requiring a bankruptcy court to conduct a hearing on a party's motion for leave in every case. Whether to hold a hearing is within the sound discretion of the bankruptcy court.

27

observed at oral argument, the "not without foundation" standard is similar to the standard courts employ when evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), we emphasize that the former involves a greater degree of flexibility. *Compare Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 826 (3d Cir. 2011) ("To withstand a Rule 12(b)(6) motion to dismiss, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'") (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)), *with In re Nat'l Molding Co.*, 230 F.2d at 71. Reviewing courts should accord significant deference to the determinations of the bankruptcy court, which, given its familiarity with the underlying facts and the parties, is uniquely situated to determine whether a claim against the trustee has merit. The bankruptcy court is also uniquely situated to determine the potential effect of a judgment against the trustee on the debtor's estate. As the Ninth Circuit Bankruptcy Appellate Panel noted in *In re Kashani*, the decision whether to grant leave may involve a "balancing of the interests of all parties involved" and consideration of whether another tribunal may have expertise regarding the issues in the proposed suit. 190 B.R. at 886, 887 (citation omitted). We will not second-guess the bankruptcy court's judgment unless it is clear from the record that the proposed suit is wholly lacking in factual or legal support. *See Anderson*, 520 F.2d at 1029 (explaining that permission to sue a trustee "ordinarily should be granted unless it is clear that the claim is without foundation").

In this case, the Bankruptcy Court did not abuse its discretion in concluding that CGL had met its burden of

establishing that its claims against the Trustee were "not without foundation." CGL's motion for leave alleged that (1) "[t]he sales of individual lots in violation of Restriction No. 1 [were] unlawful and . . . caused damage to CGL's property interests in Lot 45" and (2) the agreement between the Trustee and the Township was "an attempt to deprive CGL of its property rights without notice and without due process of law." Although CGL's motion did not specify a particular state law cause of action, as the Bankruptcy Court observed, the proposed state court action would be a property dispute involving the status of Restriction No. 1, and whether the owner of a lot in the subdivision could enforce the restriction against another owner.

CGL's motion set forth the following factual allegations: (1) the Parkside subdivision plan included a recorded restriction prohibiting the sale of lots to "parties having residences constructed" on the lots; (2) in purchasing Lot 45, CGL relied on assurances from the Township Solicitor that Restriction No. 1 did not prevent the sale of Lot 45, and the Bankruptcy Court's March 10, 2009 order confirming that the sale was "free and clear of Restriction #1"; (3) after the sale of Lot 45, the Trustee filed motions with the Bankruptcy Court seeking authorization to sell the individual lots in the mobile home park, but none of those motions advised the court of Restriction No. 1's applicability to the individual lots; (4) the Trustee then sold most of the lots in the mobile home park to individual residents who had affixed their mobile homes to the land; and (5) on December 14, 2009, the Trustee and the Township entered into an agreement which purported to abrogate Restriction

29

No. 1 as to the forty-four individual lots, and CGL was not a party to that agreement. During the hearing on CGL's motion, Grant Wise, the owner of CGL, testified that he was under the assumption when he purchased Lot 45 that Restriction No. 1 remained in place with respect to the forty-four individual lots, and explained that single ownership was crucial to his decision to purchase.

As the District Court noted, CGL had presented "evidence of a restriction on the deeds to the individual lots that had been recorded," and there was "a legitimate disagreement about the status of those restrictions." *In re Vistacare Grp., LLC*, 2011 WL 2111997, at *4. The Bankruptcy Court determined that a state court would "probably ha[ve] expertise in [the] area," and therefore state court was the appropriate forum in which to resolve the dispute. This was not an abuse of discretion. Under Pennsylvania law, a restriction in a subdivision plan creates an enforceable restrictive covenant, even if the restriction is not specifically set forth in the deeds conveying the lots created by the subdivision. *Ballard v. Heppe*, 589 A.2d 266, 268-69 (Pa. Super. Ct. 1991); *Doylestown Twp. v. Teeling*, 635 A.2d 657, 661 (Pa. Commw. Ct. 1993). A land owner in a subdivision may institute an action against the developer or another owner in the subdivision to enforce restrictive covenants that appeared in the recorded subdivision plan. *Berg v. Georgetown Builders, Inc.*, 822 A.2d 810, 819-20 (Pa. Super. Ct. 2003) (discussing *Perrige v. Horning*, 654 A.2d 1183 (Pa. Super. Ct. 1995)). For example, in *Perrige v. Horning*, the Pennsylvania Superior Court held that an owner in a subdivision could bring suit to enforce a restrictive

30

covenant in a previously approved subdivision plan, and to enjoin an attempt by another owner and the municipality to alter that plan in a way that violated the existing restrictions. 654 A.2d at 1186-87; *see also Gey v. Beck*, 568 A.2d 672, 673, 679 (Pa. Super. Ct. 1990) (issuing injunction to protect lot owners who were granted "protective covenants" to preserve the residential nature of a development); *Teeling*, 635 A.2d at 661 (finding that conditions attached to a subdivision plan could be enforced in equity by an owner of other lots in the subdivision).

Here, CGL purchased Lot 45, a parcel within the Parkside subdivision. The subdivision was subject to a restrictive covenant barring the sale of lots to individuals with residences constructed on the lots. Nevertheless, the Trustee sold many of the forty-four individual lots to such individuals, and together with the Township, attempted to remove the restrictive covenant to allow for the sales. Although we express no opinion regarding CGL's likelihood of success on its claims once it gets to state court, the Bankruptcy Court did not err in concluding that the claims were "not without foundation." *See In re Nat'l Molding Co.*, 230 F.2d at 71. Admittedly, "[r]estrictive covenants must be construed in light of their language, their subject matter, the intent or purpose of the parties, and the conditions surrounding their execution." *Perrige*, 654 A.2d at 1188 (citation omitted). However, in determining whether a proposed suit related to the enforcement of a restrictive covenant is "not without foundation," a bankruptcy court need not make factual findings regarding the parties' intent. *See In re Nat'l Molding Co.*, 230 F.2d at 71; *Perrige*, 654

31

A.2d at 1188. It is within the discretion of the bankruptcy court to determine that such questions are most appropriately answered by a state tribunal.

On appeal, the Trustee maintains that the Bankruptcy Court erred in failing to consider his arguments that he was entitled to immunity for the challenged actions, or alternatively, that the proposed suit was barred under preclusion principles.[13] We disagree. A bankruptcy court is not required to consider immunities and defenses raised by a trustee when evaluating a motion for leave. A bankruptcy court cannot be expected to conduct a trial on the merits of a party's proposed state law claim against a trustee simply to decide whether to grant leave to pursue such a claim in state court. The bankruptcy court need only satisfy itself that the claim is "not without foundation." *In re Nat'l Molding Co.*, 230 F.2d at 71. The trustee, of course, will retain the right to raise immunities and defenses in state court.

---

[13] At oral argument, CGL asserted that the immunity issue was never raised before the Bankruptcy Court and thus we should consider it waived. Although CGL is correct that the issue was not addressed during the October 21, 2010 hearing before the Bankruptcy Court, the Trustee did raise immunity as a defense in his response to CGL's motion for leave. This was sufficient to preserve the issue for appellate review.

32

## IV.

For the foregoing reasons, we will affirm the order of the District Court affirming the order of the Bankruptcy Court granting CGL's motion for leave. We hold that: (1) the *Barton* doctrine continues to apply to bankruptcy trustees; and (2) the Bankruptcy Court did not abuse its discretion in determining that CGL's proposed claims were "not without foundation."