FISHER, Circuit Judge, concurring in the judgment. Bankruptcy trustees play a role in our federal judicial system rooted in centuries of Anglo-American bankruptcy law. Like their predecessors, modern-day trustees perform functions that are essential to the judiciary’s orderly disposition of a bankrupt’s estate. I would hold that the Chapter 7 bankruptcy trustee in this case (hereinafter Trustee) is immune from suit on the basis of quasi-judicial immunity. I therefore agree with the majority that the judgment of the District Court should be affirmed. In this separate opinion, I explain why, in my view, the doctrine of qualified immunity upon which the majority rests its decision is not properly before this Court, and then set forth my conclusion that the Trustee should be accorded quasi-judicial immunity. I Qualified immunity protects government officials “from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.” Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). “The presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties.” Burns v. Reed, 500 U.S. 478, 486-87, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991). The Supreme Court has thus admonished that the extension of absolute immunity should be “quite sparing” and not extended “any further than its justification would warrant.” Id. at 487, 111 S.Ct. 1934. It is my respectful submission, however, that the Trustee’s Harlow qualified immunity defense is not adequately preserved for our consideration. Qualified immunity “is an affirmative defense that must be pleaded by a defendant official.” Harlow, 457 U.S. at 815, 102 S.Ct. 2727. The Supreme Court has therefore long held that “the burden of pleading it rests with the defendant.” Gomez v. Toledo, 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980) (citing Fed. R. Civ. P. 8(c)); see also Crawford-El v. Britton, 523 U.S. 574, 595, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998); Thomas v. Independence Twp., 463 F.3d 285, 293 (3d Cir. 2006), As the majority recognizes, the Trustee failed to invoke Harlow qualified immunity before the Bankruptcy Court. Quasi-judicial immunity is the only defense she pleaded. While our cases permit a defendant to “raise qualified immunity as a defense at trial,” Sharp v. Johnson, 669 F.3d 144, 168 (3d Cir. 2012), we have not allowed a defendant to raise Harlow qualified immunity for the first time on appeal. And understandably so, since the Supreme Court has rejected efforts by courts to alter established rules of procedure in immunity cases. See Crawford-El, 523 U.S. at 594-97, 118 S.Ct. 1584; Johnson v. Jones, 515 U.S. 304, 317-18, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995); Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164-69, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993); Gomez, 446 U.S. at 639-40, 100 S.Ct. 1920. As I read the opinions of the Bankruptcy Court and the District Court, neither decided this case on the basis of Harlow qualified immunity. The Bankruptcy Court’s opinion does not cite any Harlow qualified immunity cases. And while the District Court did reference Harlow’s standard once, that brief mention appears only in the court’s description of Phoenician’s arguments on appeal. See 554 B.R. 747, 755 (W.D. Pa. 2016) (“[Phoenician] argues that Trustee Swope is not entitled to qualified immunity because she violated its clearly established rights and because a reasonable Chapter 7 [t]rustee would have believed that evicting [Phoenician] from the restaurant without a court order violated its Fourth Amendment rights and deprived it of procedural due process.”). The District Court instead cited two quasi-judicial immunity decisions—Antoine v. Byers & Anderson, Inc., 508 U.S. 429, 113 S.Ct. 2167, 124 L.Ed.2d 391 (1993), and In re Castillo, 297 F.3d 940 (9th Cir. 2002)—for the proposition that such immunity “is historically accorded to trustees.” 554 B.R. at 756. Though the Bankruptcy Court and District Court each stated that the Trustee “is entitled to qualified rather than absolute immunity” because she “did not act pursuant to a court order,” id.; see 545 B.R. 91, 113-14 (Bankr. W.D. Pa. 2015), that proposition simply refers to the fact that quasi-judicial immunity can at times be qualified rather than absolute. See 6 Collier on Bankruptcy ¶ 704.04[1], p. 704-13 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2017) (“Trustees who act within the scope of the authority and discretion that they are given have been held entitled to quasi-judicial immunity, and to the extent that they are executing orders of the court, they have been held entitled to absolute immunity.”) (footnote omitted). That quasi-judicial immunity can be qualified does not mean that Harlow qualified immunity is at issue. Unlike quasi-judicial immunity, Harlow qualified immunity is a contemporary doctrine. In Harlow the Supreme Court “completely reformulated qualified immunity along principles not at all embodied in the common law, replacing the inquiry into subjective malice so frequently required at common law with an objective inquiry into the legal reasonableness of the official action.” Anderson v. Creighton, 483 U.S. 635, 645, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). While quasi-judicial immunity is rooted in the common law, see infra Part II, Harlow qualified immunity is not. A distinction between the two doctrines exists and it should be observed. Because neither the Bankruptcy Court nor the District Court decided this case on the basis of Harlow qualified immunity, the issue is not properly before us. Like the Supreme Court, we are “a court of review, not first view.” Cutter v. Wilkinson, 544 U.S. 709, 718 n.7, 125 S.Ct. 2113, 161 L.Ed.2d 1020 (2005); see Wood v. Milyard, 566 U.S. 463, 473, 132 S.Ct. 1826, 182 L.Ed.2d 733 (2012) (“[Ajppellate courts ordinarily abstain from entertaining issues that have not been raised and preserved in the court of first instance”). This precept applies as well in bankruptcy cases. Our precedent instructs district courts to follow “the general rule that when a party fails to raise an issue in the bankruptcy court, the issue is waived and may not be considered ... on appeal.” In re Kaiser Grp. Int’l Inc., 399 F.3d 558, 565 (3d Cir. 2004). I would therefore not absolve the Trustee of her obligation to raise Harlow qualified immunity before the Bankruptcy Court. II Whether or not the Trustee sufficiently preserved her Harlow qualified immunity defense, I believe this case should be decided based on the historical tradition of according quasi-judicial immunity to bankruptcy trustees sued by third parties for actions taken within the scope of their official duties. It has long been understood that the various immunities from suit possessed by public officials at common law in 1871, the year Congress passed 42 U.S.C. § 1983, are retained in suits against state officials under that statute. See, e.g., Tenney v. Brandhove, 341 U.S. 367, 376, 71 S.Ct. 783, 95 L.Ed. 1019 (1951); Rehberg v. Paulk, 566 U.S. 356, 361-62, 132 S.Ct. 1497, 182 L.Ed.2d 593 (2012). The availability and scope of these immunities is the same in actions brought against federal officials under Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). See Butz v. Economan, 438 U.S. 478, 503-04, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). Among the immunities firmly established in the common law is the absolute immunity judges enjoy for actions when carrying out their judicial functions. See Bradley v. Fisher, 80 U.S. (13 Wall.) 335, 347, 20 L.Ed. 646 (1872) (Describing judicial immunity as “the settled doctrine of the English courts for many centuries” that “has never been denied ... in the courts of this country.”). Pre-1871 common-law courts also extended quasi-judicial immunity to public servants performing “official. acts involving policy discretion but not consisting of adjudication.” Burns, 500 U.S. at 500, 111 S.Ct. 1934 (Scalia, J., concurring in the judgment in part and dissenting in part). In Antoine v. Byers & Anderson, supra, the Supreme Court adopted a two-step approach for determining when quasi-judicial immunity attaches to the acts of officials other than judges who are involved in the judicial process. First, “[i]n determining which officials perform functions that might justify full exemption from liability,” courts must undertake “a considered inquiry into the immunity historically accorded the relevant official at common law and the interests behind it.” Antoine, 508 U.S. at 432, 113 S.Ct. 2167 (internal quotation marks omitted). Next, courts must “consider whether judges, when performing that function, were themselves entitled to absolute immunity.” Id. at 435, 113 S.Ct. 2167. Stated differently, “judicial immunity is extended to officials other than judges” when “their judgments are functionally comparable to those of judges—that is, because they, too, ‘exercise discretionary judgment’ as part of their function.” Id. at 436, 113 S.Ct. 2167 (brackets omitted) (quoting Imbler v. Pachtman, 424 U.S. 409, 423 n.20, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976)). This approach accords with the “ ‘touchstone’ ” for the applicability of judicial immunity, namely, “ ‘the performance of the function of resolving disputes between parties, or of authoritatively adjudicating private rights.’ ” Id. at 435-36, 96 S.Ct. 984 (quoting Burns, 500 U.S. at 500, 111 S.Ct. 1934 (opinion of Scalia, J.)). And while Antoine’s functional approach “is tied to the common law’s identification of the functions that merit the protection of absolute immunity,” the Supreme Court’s precedents “have not mechanically duplicated the precise scope of the absolute immunity that the common law provided to protect those functions.” Rehberg, 566 U.S. at 364, 132 S.Ct. 1497. Applying the analytical framework set forth in Antoine, Chapter 7 bankruptcy trustees should be accorded quasi-judicial immunity for actions taken within the scope of their duties that are necessary to the bankruptcy court’s adjudication of a debtor’s estate. The bankruptcy trustees of today perform quasi-judicial functions that trace back to their sixteenth-century English predecessors. England’s first bankruptcy laws were passed in 1542 and 1570. See 34 & 35 Hen. 8 c. 4 (1542-43); 13 Eliz. c. 7 (1570). The latter statute “filled out the basic parameters of the English bankruptcy system ... and remained in effect until the time of the American Revolution.” Charles Jordan Tabb, The History of the Bankruptcy Laws in the United States, 3 Am. Bankr. Inst. L. Rev. 5, 8 (1995). In addition to naming acts of bankruptcy, the law vested in the Lord Chancellor “power to appoint, by commission of the great seal, certain persons to exercise the powers of the Chancellor over the person and property of the bankrupt.” 8 William S. Holdsworth, A History of English Law 470 (3d ed. 1922). These commissioners “had substantial powers, originally akin to a combination of today’s trustee and bankruptcy judge.” Tabb, supra, at 8. They supervised a process that “mirrored a modern straight liquidation case” wherein they would perform “normal trustee-like activities of collecting, liquidating, and distributing the debtor’s property to creditors, and more traditional judicial activities, such as seizing property, summoning persons to appear before them, and committing people to prison.” Id. at 8-9. A statute of 1707, 4 Anne c. 17, delegated these trustee-like duties to assignees—so-called because they were assigned the bankrupt’s property. See also Central Va. Community College v. Katz, 546 U.S. 356, 370, 126 S.Ct. 990, 163 L.Ed.2d 945 (2006) (observing that English bankruptcy assignees were “the 18th-century counterparts of today’s bankruptcy trustees”). Early American bankruptcy law followed the English system in many respects. Though the Framers gave Congress the power to “establish ... uniform Laws on the subject of Bankruptcies throughout the United States,” U.S. Const, art I, § 8, cl. 4, no permanent bankruptcy legislation existed until 1898. Temporary legislation was in place, however, from 1800 to 1803, from 1841 to 1843, and from 1867 to 1878, each passed in the wake of a major financial panic. At every step of the way, Congress retained the three-part English model: bankruptcy jurisdiction was placed in the district courts, those courts appointed commissioners (called “registers” in the 1867 Act and “referees” in the 1898 Act) to assist the judges in executing their duties, and assignees would perform functions critical to the liquidation and distribution of the bankruptcy estate. See Act of Apr. 4, 1800, ch. 19, 2 Stat. 19 (repealed 1803); Act of Aug. 19, 1841, ch. 9, 5 Stat. 440 (repealed 1843); Act of Mar. 2, 1867, ch. 176, 14 Stat. 517 (repealed 1878); Act of July 1, 1898, ch. 541, 30 Stat. 544 (repealed 1978). Another antecedent to the modern-day bankruptcy trustee can be found in the equity receivership commonly used during the late nineteenth and early twentieth centuries to assist with corporate reorganizations, especially with regard to struggling railroads. See Tabb, supra, at 21-22. As this Court has previously recognized, “[a] bankruptcy trustee is the ‘statutory successor to the equity receiver’ and ‘just like an equity receiver, a trustee in bankruptcy is working in effect’ for the court overseeing the bankruptcy proceeding, ‘administering property that has come under the court’s control by virtue of the Bankruptcy Code.’ ” In re VistaCare Grp., LLC, 678 F.3d 218, 229 (3d Cir. 2012) (brackets omitted) (quoting In re Linton, 136 F.3d 544, 545 (7th Cir. 1998)). So to the extent equity receivers and nineteenth century assignees performed duties that required the exercise of discretionary judgment to assist courts in adjudicating bankruptcy-related disputes, they would have enjoyed quasi-judicial immunity from suit' under the common law. The courts of appeals have uniformly held that the procedural and substantive immunities of equity receivers at common law carried over to the bankruptcy trustees of today. Thus, there is considerable acknowledgment that the common law procedural immunity known as the “Barton doctrine,” see Barton v. Barbour, 104 U.S. 126, 128-29, 26 L.Ed. 672 (1881), whereby an equity receiver could not be sued without leave of the court that appointed him, applies to the present-day bankruptcy trustee. See In re VistaCare Grp., 678 F.3d at 232; Carroll v. Abide, 788 F.3d 502, 505 n.12 (5th Cir. 2015) (collecting cases from ten circuits). Among the rationales courts have articulated in favor of the Barton doctrine is the “strong interest” “the court that appointed the trustee has ... in protecting him from unjustified personal liability for acts taken within the scope of his official duties.” In re Lehal Realty Assocs., 101 F.3d 272, 276 (2d Cir. 1996); see also Vass v. Conron Bros. Co., 59 F.2d 969, 970 (2d Cir. 1932) (L. Hand, J.) (“A trustee is equally an officer of the court; and [like a receiver] his possession is protected because it is the court’s .... ” (citation omitted)). There is also a broad consensus that bankruptcy trustees are substantively im.mune from suit under the doctrine of quasi-judicial immunity. Generally speaking, there are “two types of actions against trustees: breach of fiduciary duty claims brought by parties interested in the administration of the estate, and claims in tort or contract brought by third parties.” In re Mailman Steam Carpet Cleaning Corp., 196 F.3d 1, 7 n.4 (1st Cir. 1999). It is settled that a bankruptcy trustee may be held personally liable for breach of fiduciary duty. See Mosser v. Darrow, 341 U.S. 267, 271, 274, 71 S.Ct. 680, 95 L.Ed. 927 (1951); In re McKenzie, 716 F.3d 404, 413 (6th Cir. 2014); In re Mailman Steam Carpet Cleaning, 196 F.3d at 6-7. Courts have also held that bankruptcy trustees are covered by quasi-judicial immunity when acting pursuant to an express court order. See, e.g., In re Harris, 590 F.3d 730, 742 (9th Cir. 2009); Boullion v. McClanahan, 639 F.2d 213, 214 (5th Cir. Unit A Mar. 1981) (per curiam). Phoenician’s suit is of the second type, as it alleges no breach of fiduciary duty. Rather, Phoenician is a third party raising a claim sounding in tort. In such cases, “a bankruptcy trustee is ordinarily entitled to quasi-judicial immunity from suit ... for actions taken in his official capacity.” In re McKenzie, 716 F.3d at 413; see In re Mailman Steam Carpet Cleaning, 196 F.3d at 7 n.4; Ziegler v. Pitney, 139 F.2d 595, 596 (2d Cir. 1943); McRanie v. Palmer, 2 F.R.D. 479, 481 (D. Mass. 1942). This immunity was recognized long ago in McNulta v. Lockridge, 141 U.S. 327, 12 S.Ct. 11, 35 L.Ed. 796 (1891), when the Supreme Court held that equity receivers cannot be held personally liable in suits by third parties—the suit instead can lie only against the receivership itself: So long as the property of the corporation remains in the custody of the court and is administered through the agency of a receiver, such receivership is continuous and uninterrupted until the court relinquishes its hold upon the property, though its personnel may be subject to repeated changes. Actions against the receiver are in law actions against the receivership, or the funds in the hands of the receiver, and his contracts, mis-feasances, negligences and liabilities are official and not personal, and judgments against him as receiver are payable only from the funds in his hands. Id. at 332, 12 S.Ct. 11 (emphasis in original). While the quasi-judicial immunity of bankruptcy trustees does not extend to acts by a trustee that are ultra vires, see, e.g., Leonard v. Vrooman, 383 F.2d 556, 560 (9th Cir. 1967), a bankruptcy trustee “is not required to obtain prior court approval in order to invoke quasi-judicial immunity from suit by a third party for actions taken by the trustee on behalf of the estate and within the scope of his authority.” In re McKenzie, 716 F.3d at 414. The Bankruptcy Court and the District Court thus drew an unnecessary distinction between “the absolute immunity analyses associated with actions taken pursuant to a court order [and] the qualified immunity analyses of actions undertaken absent an authorizing order of court.” 545 B.R. at 104 (emphasis deleted); see 564 B.R. at 756. As already noted, while it is true that a “trustee’s derivative judicial immunity is qualified” in certain respects, see 1 Joan N. Feeney et al., Bankruptcy Law Manual § 4:16, p. 799 (5th ed. 2016), the qualified nature of a bankruptcy trustee’s quasi-judicial immunity is different from the doctrine of Harlow qualified immunity. Against this background, granting the Trustee quasi-judicial immunity in this case is not a close call. The Trustee’s efforts to secure the property of J & S’s estate—here, the real property leased to Phoenician—-were discretionary actions performed within the scope of her statutory duties. The Bankruptcy Code requires Chapter 7 trustees to “collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest,” and, in connection with this responsibility, to “be accountable for all property received.” 11 U.S.C. § 704(a)(1), (2). Both the Bankruptcy Court and District Court noted the undisputed fact that the Trustee’s duties included safeguarding the estate property. See 545 B.R. at 108; 554 B.R. at 756. Those courts therefore sensibly found that “a Chapter 7 [tjrustee has a duty to secure and preserve estate assets, including changing the locks to a building when circumstances warrant.” 545 B.R. at 113; see 554 B.R. at 757. This conclusion is consistent with the guidance provided by the Department of Justice’s Office of the United States Trustee, which advises Chapter 7 trustees: In those cases where the property appears to have value for the estate, the trustee must obtain control over the property, which may include changing the locks at the premises, hiring guards, etc. The trustee also must immediately take all other steps which may be reasonably necessary to preserve the assets. It is not always sufficient to wait until after the meeting of creditors to take action to preserve assets. U.S. Dep’t of Justice, Handbook for Chapter 7 Trustees § 4.C.3.f, p. 4-6 (2012) (citing 11 U.S.C. § 704). Neither the Bankruptcy Code nor the Trustee Handbook specifies how trustees are to exercise their duty to safeguard estate property. A trustee must accordingly “exercise a discretionary judgment as part of th[is] function.” Antoine, 508 U.S. at 436, 113 S.Ct. 2167 (internal quotation marks omitted). The Trustee is thus entitled to quasi-judicial immunity for the discretionary acts she took in furtherance of her duty to safeguard the property of J & S’s estate. [[Image here]] Because I would hold that the Trustee is shielded from liability under the doctrine of quasi-judicial immunity, I concur in the judgment.