10-2310-cv, 11-0742-cv
Bonnant v. Merrill Lynch

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan Courthouse, 500 Pearl Street, in the City of New York, on the 8th day of March, two thousand twelve.

Present:
        Pierre N. Leval,
        Rosemary S. Pooler,
                *Circuit Judges,*
        Denise L. Cote[*],
                *District Judge*.

_____

Marc Bonnant,

        *Plaintiff-Appellant,*

                v.                                          Nos. 10-2310-cv, 11-0742-cv

Merrill Lynch, Pierce, Fenner & Smith, Inc.,
Merrill Lynch Capital Services, Inc,

        *Defendants-Appellees*.

_____

[*]The Honorable Denise L. Cote, United States District Judge for the Southern District of New York, sitting by designation.

For Plaintiff-Appellant:               DAVID J. HOFFMAN, Law Offices of David J. Hoffman, New York, NY.

For Defendants-Appellees:        DAVID J. LIBOWSKY (Brian F. Amery, Dominick F. Evangelista, *on the brief*), Bressler, Amery & Ross, P.C., New York, NY.

Appeal from the United States District Court for the Southern District of New York (Sullivan, *J.*).

**ON CONSIDERATION WHEREOF**, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgment of the district court dated May 18, 2010, be and hereby is **VACATED** and **REMANDED**.

Plaintiff Marc Bonnant appeals from the district court's grant of summary judgment in favor of Defendants Merrill Lynch, Pierce, Fenner & Smith, Inc. (hereinafter "Merrill Lynch") and Merrill Lynch Capital Services, Inc., directing Bonnant to arbitrate a claim brought against him by Defendants. The district court held that, in signing a contract between Sophin Investments, S.A. and Merrill Lynch to open an International Cash Management Account for Sophin at Merrill Lynch, Bonnant, who signed for Sophin as its officer and representative, also unambiguously identified himself as "accountholder," or otherwise consented to arbitration. The district court's ruling cannot be sustained unless Bonnant's status either as an accountholder, or as a party to the agreement, is unambiguously established on the face of the document. The district court based its interpretation primarily on the fact that Bonnant signed the agreement twice. After considering the agreement in its entirety, we conclude that Bonnant's second

signature did not unambiguously identify him either as accountholder or as a party to the agreement.

**I.     Background**

Plaintiff Marc Bonnant is an attorney who resides in Switzerland. On November 12, 2001, Bonnant opened a Merrill Lynch Cash Management Account for Sophin by executing Merrill Lynch's three-part form for such accounts, which upon execution constitutes the contract. Sophin, which is identified on the first page of the Merrill Lynch document as the "accountholder" is, according to Bonnant's declaration, a British Virgin Islands company, which Bonnant set up for a client for the receipt and investment of the client's inheritance. Bonnant is identified in the Corporate Resolutions portion of Merrill Lynch's form as Sophin's "President/Director" and "Representative." At the end of the Application portion of the agreement, Bonnant signed his name twice, first on the first signature line, captioned, "Signature (Accountholder) (If Corporation, Authorized Representative)", and again on the second signature line, captioned "Signature (Accountholder)". Just above the signature lines, and in bold print, the document advises parties that by signing below they agree to arbitrate any controversies.

Sophin experienced large losses in the account as a result of unsuccessful trading in naked options and swaps. On July 7, 2008, in accordance with the provision of the contract that "[t]he parties are waiving their right to seek remedies in court" and "all controversies, which may arise between us . . . shall be determined by arbitration," Sophin commenced arbitration against Defendants Merrill Lynch and Merrill Lynch Capital Services, Inc. before the Financial Industry Regulatory Authority. Sophin alleged that the losses in the account were "the result of

unauthorized and unsuitable trades." In their answer in the arbitration, Defendants claimed that Bonnant authorized the contested trading. They asserted a counterclaim against Sophin seeking to recover the deficit in the Sophin account, as well as an early termination fee.

In addition, Defendants named Bonnant as a third-party defendant in the arbitration, and asserted claims against him personally, claiming entitlement to indemnification by Bonnant in the event the arbitration resulted in an award in Sophin's favor. Their claim of entitlement to indemnification by Bonnant was based on the contention that he authorized the trades Merrill Lynch executed for Sophin and that he "may have misrepresented Sophin's investment experience, financial condition, [and] risk tolerance."

Bonnant then brought this action in the district court seeking to enjoin Defendants from bringing him into the arbitration. Bonnant's suit is based on his assertion that he is "not a party to any arbitration agreement with Merrill Lynch; therefore [he] cannot be required to arbitrate with Merrill Lynch." His declaration asserts that he signed the agreement opening Sophin's account "in a purely representative capacity on behalf of Sophin and never intended to be bound personally by this agreement," and that "[n]one of [his] personal funds are in Sophin."

Bonnant moved for a preliminary injunction, which the district court denied, concluding that Bonnant failed to demonstrate a likelihood of success on the merits. *Bonnant v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 09 Civ. 3007, 2009 WL 1809980, at *5 (S.D.N.Y. June 25, 2009). Noting that Bonnant signed Sophin's application twice, and citing case law which the court considered as precedential support for its ruling, the court stated that "[Bonnant's] second signature, as a separate '[a]ccountholder,' indicates that [Bonnant] opened the Sophin ICMA

-4-

Account in both representative and personal capacities." *Id.* (second alteration in original).

Defendants then moved for summary judgment and to compel arbitration. The district court granted summary judgment in favor of Defendants, ordering Bonnant to arbitrate. *Bonnant v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 09 Civ. 3007 (S.D.N.Y. May 18, 2010). The court gave various reasons for its conclusion that the contract unambiguously identified Bonnant as an accountholder and as a party to the agreement, including by reference the reasons set forth in the court's previous order denying Bonnant's motion for a preliminary injunction. We examine each of the court's reasons below.

**II.     Discussion**

**A.     Merrill Lynch**

We review a district court's interpretation of contract provisions and its award of summary judgment de novo. *Bank of N.Y. v. First Millenium, Inc.*, 607 F.3d 905, 914 (2d Cir. 2010). "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)) (internal quotation marks omitted). Principles of contract and agency determine whether a party is bound by an arbitration agreement. *McAllister Bros. v. A & S Transp. Co.*, 621 F.2d 519, 524 (2d Cir. 1980).

Under New York law, which governs this contract, "[t]he threshold question in a dispute over the meaning of a contract is whether the contract terms are ambiguous." *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 59, 66 (2d Cir. 2000). In a contract dispute, generally, a motion for

summary judgment may be granted only when the contract language is "wholly unambiguous" and conveys "a definite meaning." *Topps Co. v. Cadbury Stani S.A.I.C.*, 526 F.3d 63, 68 (2d Cir. 2008). A contract is ambiguous if it is capable of "more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Int'l Multifoods Corp. v. Commercial Union Ins. Co.*, 309 F.3d 76, 83 (2d Cir. 2002) (internal quotation marks omitted).

Accordingly, the district court could not properly grant the motion for summary judgment ordering Bonnant to submit to the arbitration unless the agreement unambiguously established his agreement to arbitrate any claims Merrill Lynch would bring against him personally arising out of the agreement establishing Sophin's account.

The district court relied on several different theories, some explained in its opinion denying Bonnant's motion for a preliminary injunction and some explained in its brief oral opinion granting summary judgment, which adopted by reference the reasons set forth in the earlier ruling. We have examined each of the court's theories and find that none of them unambiguously establishes Bonnant's agreement to arbitrate claims brought by Defendants seeking to establish his personal liability. Each theory expressed by the district court relies on a misreading or misinterpretation of some aspect of the contract or the legal precedents. We discuss each theory below.

        **1.**      **The District Court mistakenly read the legend preceding Bonnant's second signature to identify him as the "accountholder."**

It appears the district court's principal justification for its judgment was its perception, first explained in the opinion denying Bonnant's motion for a preliminary injunction, and adopted by reference in the decision granting summary judgment, that Bonnant unambiguously accepted the status of "accountholder" because "[o]n the signature page of the document . . . [Bonnant] signed his name twice – once as Sophin's 'Authorized Representative' and once as an additional 'Accounholder.'" 2009 WL 1809980, at *1. The court concluded that Bonnant's "second signature, as a separate '[a]ccountholder,' indicates that [Bonnant] opened the Sophin ICMA Account in both representative and personal capacities." *Id.* at *5.

Putting aside the question of whether extrinsic evidence might show that Bonnant made himself a party to the agreement, which question is beyond the scope of this appeal, we find that the agreement cannot be construed to establish that status for Bonnant *unambiguously*, as is required for grant of summary judgment. Numerous aspects of the way Bonnant filled in the blanks in the Merrill Lynch form are inconsistent with the conclusion reached by the district court. And, as explained below, while some of Bonnant's entries would be consistent with his being personally the accountholder, these entries are also wholly consistent with his being the signatory for the corporate accountholder. To assess the question raised by the motion for summary judgment, furthermore, it is not sufficient to look only at the signature line in isolation. What is written on a signature line must be understood in the light of the entire agreement. Accordingly, we examine several terms of the agreement establishing Sophin's International Cash Management Account.

The agreement was made on a fourteen-page form provided by Merrill Lynch for the opening of an International Cash Management Account, with numerous blanks to be filled in by the applicant for the account. The form is in three parts. The first four pages are the "International CMA Account Application and Agreement Form" (the "Application"), which *inter alia* specifies the type of account (whether single, joint, corporate, trust, estate, or other) and identifies the accountholder or accountholders. The next two pages are captioned "Corporate Resolutions"; in the case of a corporate client, these provide the form of board resolutions which will authorize the account agreement in a manner satisfactory to Merrill Lynch, as well as specify who are the representatives of the corporation who are authorized to give instructions and to sign on behalf of the corporate accountholder. Finally pages seven through fourteen are captioned "International Cash Management Account Agreement" (the "Agreement"). This latter portion specifies numerous terms and conditions of the agreement required by Merrill Lynch and contains no blanks to be filled in by the applicant.

On the opening pages of the Application, the first blank, captioned "Type of Account," directs the applicant to "check the appropriate box" to indicate the type of account being opened, as between "Single, Joint, Corporate, Trust, Estate, and Other" (with a blank line for explanation of what "Other" represents). The only entry in this portion is that "Corporate" has been checked. The second blank on the form, captioned "Account Information," instructs the applicant to "print the names of *all* accountholders" (emphasis added). Above the legend "Primary Accountholder Name," "Sophin Investment" has been entered. The second half of the line calls for "Secondary Accountholder Name, if Joint Account." This portion of the line was left blank. Another line

calls for the identification of "Additional Accountholders." This line was also left blank. Thus, these portions of the Application, taken by themselves, state that this is a "Corporate" account and that Sophin is the sole accountholder.

The Corporate Resolutions portion of the agreement calls for the insertion of the name of the corporation applying to open a corporate Cash Management Account at Merrill Lynch. The words "Sophin Investment" have been filled in.  Further down the page are three blank lines calling for the names and signatures of "Representatives" who are authorized to act for and sign for the corporate accountholder. Lines 1 and 2 were both filled in with the name "BONNANT MARC," followed by Bonnant's signature. (The third line was left blank. No explanation is given why Bonnant's name and signature were written in twice.) This Corporate Resolutions portion of the agreement concludes with a blank for certification by an officer or director of the corporation to the due adoption of the specified resolutions by the "unanimous vote of the Board of Directors of said Corporation." These blanks have been filled in to indicate that the certification on behalf of Sophin's board is made by "Marc Bonnant," as "President/Director of Sophin Investment," and with Bonnant's signature at the bottom.

On the same date Bonnant executed these forms, he also executed IRS Form W-8BEN, a Certificate of Foreign Status of Beneficial Owner for United States Tax Withholding (the "Tax Certificate"), which identifies the beneficial owner of the account. The Tax Certificate lists Sophin as the beneficial owner of the account, identifies Sophin as a corporation, and gives its addresses. Bonnant's signature appears at the line that reads "Signature of beneficial owner (or individual authorized to sign for beneficial owner)".

The entries made in the Application under Type of Account and Account Information, the Corporate Resolutions, and the Tax Certificate all consistently state that the Sophin account is a corporate account, and not a single, joint, or other type of account, that the sole accountholder is Sophin Investment, that Merrill Lynch's sole counterparty to the agreement is the corporation known as Sophin Investment, and that Bonnant's role in signing the agreement was as officer, director, representative, and authorized signatory of the corporate accountholder.

We proceed from there to examine the other portions of the agreement, which led the district court to conclude that, notwithstanding the previously considered sections that unambiguously identify Bonnant as the representative of the corporate accountholder, Bonnant unambiguously identified himself as accountholder of the Sophin account and as a party to the agreement.

As noted above, the district court found that Bonnant unambiguously accepted the role of accountholder and thus is bound by the arbitration agreement because, in the district court's words, "[o]n the signature page of the document . . . [Bonnant] signed his name twice – once as Sophin's 'Authorized Representative' and once as an additional 'Accounholder,'" 2009 WL 1809980, at *1. According to the court, Bonnant's "second signature, as a separate '[a]ccountholder,' indicates that [Bonnant] opened the Sophin ICMA Account in both representative and personal capacities." *Id.* at *5 (first alteration in original).

The district court's conclusion that the second signature unambiguously made Bonnant the accountholder was based on a misreading of the legend provided in Merrill Lynch's form beneath the signature line where Bonnant placed his second signature. This legend did not say

-10-

that, by placing his or her signature on the line, the person signing thereby identifies himself or herself as the accountholder. What it said was simply, "Signature (Accountholder)." If Bonnant was indeed the authorized signatory for the accountholder Sophin, as indicated in the Application and the Corporate Resolutions of the Agreement, then the line calling for "Signature (Accountholder)" calls for his signature, as the signatory for Sophin, the accountholder. There is no reason to read his placement of his signature on that line as unambiguously identifying himself as the accountholder, as such a reading would contradict everything he entered in the preceding portions of the Application and Corporate Resolutions.

We recognize that the second signature can be seen as introducing an ambiguity. The second signature line calling for "Signature (Accountholder)", if considered in isolation, would normally be read to identify the person signing as the accountholder. Were it not for the information provided in the overall agreement as to the Type of Account, the Account Information, and the Corporate Resolutions of Sophin, Bonnant's signature on a line calling for "Signature (Accountholder)" would identify him unambiguously as the accountholder. But when that signature is considered in the context of the full agreement, the overall contract cannot be read to say unambiguously that Bonnant is the accountholder.

His signature on a line calling for "Signature (Accountholder)" is fully consistent with the portions of the contract identifying Sophin as the sole accountholder and Bonnant as its representative and signatory. If the question is considered why Bonnant signed twice as representative of Sophin, at least one possible answer is that Merrill Lynch's standard form for a corporate account could be read to ask twice for the signature of the representative of the corporate accountholder.

-11-

**2. New York law does not support the proposition that a corporate representative renders himself liable on the corporation's contract merely by signing twice.**

The district court seems to have read New York law as providing that a corporate representative who signs a contract for the corporation and then signs a second time thereby makes himself personally liable. *See* 2009 WL 1809980, at *5. When ruling on Bonnant's application for a preliminary injunction, the district court stated, quoting from *Salzman Sign Co. v. Beck*, 176 N.E.2d 74, 76 (N.Y. 1961) and *Ainbinder v. Kelleher*, No. 92 Civ. 7315, 1997 WL 420279, at *13 (S.D.N.Y. July 25, 1997), "[E]veryone in business knows that an individual stockholder or officer is not liable unless he signs individually, and where individual responsibility is demanded the nearly universal practice is that the officer signs twice – once as an officer and again as an individual." 2009 WL 1809980, at *5. However, nothing in the record supports the proposition that it is a convention of the business world that a corporate representative signing for the corporation renders himself personally liable by signing twice. Nor do the cases cited by the district court, or any other precedent known to us, support such a rule.

Under New York law, it is well-established that an "agent will not be personally bound unless there is clear and explicit evidence of the agent's intention to substitute or superadd his personal liability for, or to, that of his principal." *Mencher v. Weiss,* 114 N.E.2d 177, 179 (N.Y. 1953). For a corporate representative to be personally bound by a contract, the officer must sign both in a representative and in an individual capacity. *See Ainbinder*, 1997 WL 420279 at *13; *Salzman Sign*, 176 N.E.2d at 76. In *Salzman Sign*, which the district court cited in support of its conclusion, the plaintiff company attempted to recover an amount owed to it by a corporate entity from the corporation's president in his personal capacity. 176 N.E.2d at 75. The plaintiff

-12-

argued that the contract language specifically stated that any officers signing on behalf of the corporation also individually guaranteed payment. *Id.* The Court stated that "everyone in business knows that an individual stockholder or officer is not liable for his corporation's engagements unless he signs individually, and where individual responsibility is demanded the nearly universal practice is that the officer signs twice–once as an officer and again as an individual." *Id.* at 76. Because the contract had been signed once by the corporation's president, signing on behalf of the corporation, the court concluded that the president was not personally liable. *Id.* at 75-76. The Court of Appeals neither held nor implied that a corporate representative is personally bound under the corporation's contract merely as a consequence of signing twice. What it said was that for a corporate officer to be personally bound, he must sign the corporation's agreement in both a representative capacity and in his personal capacity. *See id.* at 76.

As the district court stated the proposition of law, it is undoubtedly correct. A corporate officer who signs on behalf of the corporation is not liable unless he signs *as an individual* (in addition to signing as the corporate representative). Thus, if individual liability of the officer is intended, the officer would sign twice–once as representative, and once *as an individual*. The district court's correct statement of *that* legal proposition, however, in no way implies that the representative's mere placement of his signature *twice* on the contract commits him to individual contractual liability. If the contract is the corporation's contract and the representative's first signature is as the corporation's representative, the corporation's representative who signs twice is not liable under the contract unless the second signature is in a context showing that the representative is agreeing to assume personal responsibility. The mere fact of signing twice says

-13-

no such thing.

**3. Nor did Bonnant make himself personally liable merely by placing his signature *once* on the Application.**

The district court also reasoned that, under express language in the Agreement, any individual who placed his signature, even once, on the Application, thereby bound himself personally to arbitrate any dispute with Merrill Lynch arising out of the Agreement. The court stated in its oral ruling on summary judgment "[T]he agreement itself specifically provides . . . 'In this agreement, 'I,' 'me,' 'my,' or 'accountholder' means each natural or legal person who signs [the Application.]'" The court then pointed out that the signature page of the Application also stated "I acknowledge . . . I am agreeing in advance to arbitrate any controversies which may arise with you." The district court thus concluded that under the plain language of the Agreement, Bonnant, as a natural person who signed the Application, became an "I" or "me" of the Agreement, and, as such, had made a personal contractual commitment to arbitrate disputes with Merrill Lynch.

Through this reasoning, the district court found Bonnant liable to arbitrate Merrill Lynch's claims against him asserting his personal liability–not because he signed twice, but merely because he signed for Sophin. Under the district court's reading of this aspect of the Agreement, any time a corporate entity opened a Merrill Lynch account using Merrill Lynch's forms, the corporate representative signing for the corporate accountholder would make himself personally liable by the mere act of signing for the corporation (at least unless he took pains to expressly negate the boilerplate clause on which the district court relied).

This construction is at odds with basic principles of agency and was expressly

contradicted by the New York Court of Appeals in *Salzman Sign*, cited above. In that case, the contract contained boilerplate to the effect that an officer for the contracting corporation who signed on its behalf thus rendered himself personally liable. 176 N.E.2d at 75. The Court of Appeals, as noted above, rejected the contention that by signing the contract the corporate representative undertook personal responsibility. *Id.* at 76. If there is a difference between this contract and the one at issue in *Salzman Sign*, the difference is that the boilerplate at issue in *Salzman Sign* was far clearer in its intention to impose personal liability on an individual based on his signing in a representative capacity. The boilerplate language in *Salzman Sign* expressly and unambiguously stated that one who signed as a corporate representative undertook to guarantee the corporation's liabilities. Nonetheless the Court of Appeals refused to read the contract as supporting individual liability of the corporate representative who signed. Here the language says nothing of the kind, and seems not to have intended such meaning.

We recognize that Merrill Lynch's form agreement builds in an ambiguity. It arguably identifies the person who signs to be the "I" or "me" of the Agreement and elsewhere provides in the boilerplate, "I am agreeing . . . to arbitrate." This passage, if considered in isolation, arguably amounts to an agreement by the signer to arbitrate. But this language cannot *unambiguously* make the person who signs the person who agrees to arbitrate. The clause identifying "I" uses the disjunctive between "individual" and "legal" person. In identifying as "I" each "natural *or* legal person" who signs, it does not necessarily mean that each natural person who signs agrees to arbitrate. It is also susceptible to the meaning that whatever type of person, natural or legal, that opens an account with Merrill Lynch, agrees to arbitrate. Such an interpretation of the ambiguity is more consistent with the portions of the agreement that identify the Sophin

corporation as the maker of the agreement.[1]

**4.  Because the agreement is ambiguous the district court could not properly grant summary judgment.**

We conclude that the agreement contains ambiguities which bar the grant of summary judgment. There are provisions in the contract which can be construed to mean that Bonnant personally agreed to arbitrate. On the other hand, other provisions of the ambiguous contract are difficult to reconcile with that interpretation. We therefore vacate the district court's ruling and its grant of summary judgment for Merrill Lynch. The court will need to determine whether the agreement, considered in its entirety, can sensibly be construed to include Bonnant's personal agreement to arbitrate disputes arising out of the Sophin agreement, and, if so, whether extrinsic evidence the parties may offer demonstrates such a status.

**B.  Merrill Lynch Capital Services**

---

[1] We note also that the consequences of construing the agreement to make Bonnant the "I" and the "accountholder" are potentially huge. The district court may have believed nothing more was at stake than the choice of forum. As we view it, however, the district court's reading of the Agreement could not only require Bonnant to arbitrate, but could also make him personally liable for millions of dollars in liabilities of Sophin. The Agreement states in Article 21

> I shall at all times be liable for the payment upon demand of any debit balance or other obligations owing in any of my accounts with you. I shall be liable to you for any deficiency remaining in any such accounts in event of the liquidation thereof, in whole or in part, by you or by me. I will pay such obligations and indebtedness upon demand.

If, as the district court viewed it, "I" means any individual who places his signature on the Application, then it would seem to follow that by signing on behalf of Sophin, Bonnant made himself personally liable for all deficiencies in Sophin's account. Arbitrators adjudicating the dispute might well regard the equivalency between Bonnant and "I" as conclusively and bindingly established by the district court's opinion, and with it, Bonnant's liability to pay upon demand all deficiencies in Sophin's account. We do not agree that the face of the Agreement unambiguously established that Bonnant undertook any form of personal responsibility merely by affixing his signature, as Sophin's authorized representative, to the Application.

The district court, apparently mindful of such dangers, stated that its ruling was "[w]ith respect to arbitrability only –and I want to be very clear about that." Notwithstanding the district court's effort to limit the scope of its ruling, the arbitrator might well conclude that, if the word "I" means Bonnant in one clause of the contract, it also means Bonnant in the other clauses of the contract.

The district court determined that Bonnant was required also to arbitrate disputes with Merrill Lynch Capital Services. The court relied on an estoppel theory. 2009 WL 1809980, at *6-7. To bind a party under this theory a court must first find that there was a valid agreement to arbitrate between two parties. *See JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 177 (2d Cir. 2004). Because we disagree with the court's conclusion the Agreement unambiguously bound Bonnant to arbitrate disputes with Merrill Lynch, we cannot agree with the district court's conclusion that under an estoppel theory Bonnant also must arbitrate disputes with Merrill Lynch Capital Services. The district court's judgment compelling Bonnant to arbitrate disputes with Merrill Lynch Capital Services is also vacated.

**III.    Conclusion**

The judgment of the district court is **VACATED**, and the case **REMANDED** for further proceedings consistent with this order.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK