**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| TMC CONSULTING SERVICES, L.L.C., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No.: N15C-11-132 EMD CCLD |
| v. | ) | |
| | ) | |
| MATTHEW WRIGHT, CHRISTOPHER | ) | |
| KENNEDY, MADISON NICHE | ) | |
| OPPORTUNITIES FUND, LTD., | ) | |
| MADISON NICHE OPPORTUNITIES | ) | |
| FUND, L.L.C., MADISON NICHE | ) | |
| OPPORTUNITIES MASTER FUND, | ) | |
| LTD., MADISON NICHE ASSETS | ) | |
| FUND, LTD., MADISON NICHE | ) | |
| ASSETS FUND, L.L.C., MADISON | ) | |
| NICHE ASSETS MASTER FUND, LTD., | ) | |
| | ) | |
| Defendants. | ) | |

Submitted: October 3, 2016
Decided January 26, 2017

*Motion of Defendants Matthew Wright and Christopher Kennedy to
Dismiss Plaintiff's Complaint*
***DENIED***

William Hazeltine, Esquire, Sullivan Hazeltine Allinson, LLC, Wilmington, Delaware and Roger G. Jones, Esquire, Bradley Arant Boult Cummings, LLP, Nashville, Tennessee, *Attorneys for Plaintiff TMC Consulting Services, L.L.C.*

John T. Dorsey, Esquire, Matthew B. Lunn, Esquire, Edmon L. Morton, Esquire, James L. Higgins, Esquire, and Mary F. Dugan, Esquire, Young Conaway Stargatt & Taylor, LLP, Wilmington, Delaware and Warren Gluck, Esquire, Sean C. Sheely, Esquire, and Sean P. Barry, Esquire, Holland & Knight, LLP, New York, New York, *Attorneys for Defendants Matthew Wright and Christopher Kennedy.*

**DAVIS, J.**

## I. INTRODUCTION

This is a civil action assigned to the Complex Commercial Litigation Division of the

Court. In this action, Plaintiff TMC Consulting Services, LLC ("TMC") asserts a breach of

contract claim against Defendants Matthew Wright, Christopher Kennedy (collectively, "Wright and Kennedy"), and six separate but related Delaware and Cayman Islands limited liability companies — Madison Niche Opportunities Fund, Ltd., Madison Niche Opportunities Fund, L.L.C., Madison Niche Opportunities Master Fund, Ltd., Madison Niche Assets Fund, Ltd., Madison Niche Assets Fund, L.L.C., and Madison Niche Assets Master Fund, Ltd. (collectively, the "Funds").

TMC is a Delaware limited liability company that offers consulting services to businesses. Wright and Kennedy are insolvency practitioners employed by RHSW (Cayman) Ltd. ("RHSW"). RHSW is a Cayman Islands firm that specializes in corporate advisory and restructuring services. Madison Niche Opportunities Fund, Ltd., Madison Niche Opportunities Master Fund, Ltd., Madison Niche Assets Fund, Ltd., and Madison Niche Assets Master Fund, Ltd. are Cayman Islands exempted limited liability companies. Madison Niche Opportunities, L.L.C. and Madison Niche Assets Fund, L.L.C. are Delaware limited liability companies.

On July 1, 2014, the Funds initiated voluntary liquidation. The Funds appointed Wright and Kennedy to serve as Joint Voluntary Liquidators to oversee the liquidation process. Wright and Kennedy and the Funds then hired TMC. Wright and Kennedy, the Funds and TMC entered into and executed the Consulting Agreement. Under the Consulting Agreement, TMC agreed to provide consulting services for the Funds during their liquidation. In return, the Funds would compensate TMC for its services.

At some point during the contract term, Wright and Kennedy terminated the Consulting Agreement. In response, TMC filed its Complaint (the "Complaint") on November 16, 2015.[1]

---

[1] TMC first filed a complaint in the U.S. District Court for the District of Delaware against RHSW and Wright and Kennedy. On September 4, 2015, RHSW filed a motion to dismiss on the grounds that the Consulting Agreement did not name RHSW as a party. Instead of responding to the motions, TMC filed a notice of dismissal, dismissing

2

The Complaint alleges that Wright and Kennedy and the Funds breached the Consulting Agreement by terminating the Consulting Agreement before allowing TMC the opportunity to cure an alleged breach.

On December 28, 2015, Wright and Kennedy filed a Motion to Dismiss, Opening Brief in Support of Motion of Defendants Matthew Wright and Christopher Kennedy to Dismiss Plaintiff's Complaint, and Declaration of Christopher Kennedy in Support of the Motion to Dismiss (collectively, the "Motion").[2] Through the Motion, Wright and Kennedy claim that TMC cannot maintain a breach of contract claim against them individually because Wright and Kennedy were acting solely in their representative capacities as Joint Voluntary Liquidators under the Consulting Agreement. TMC opposes the Motion. TMC filed its Brief in Opposition to Motion of Defendants Matthew Wright and Christopher Kennedy to Dismiss Plaintiff's Complaint (the "Opposition") on April 1, 2016. Wright and Kennedy submitted their Reply Brief of Defendants Matthew Wright and Christopher Kennedy in Further Support of Motion to Dismiss Plaintiff's Complaint (the "Reply") on April 15, 2016.

The Court held a hearing on the Motion, the Opposition and the Reply on October 3, 2016. After hearing from the parties, the Court took the Motion under advisement.

This is the Court's decision on the Motion. For the reasons set forth below, the Court will **DENY** the Motion to Dismiss.

---

its complaint without prejudice. On November 16, 2015, TMC filed the present Complaint. In the Complaint, TMC once again named Wright and Kennedy as Defendants, but dropped RHSW and added the Funds as Defendants.
[2] Wright and Kennedy also submitted the Declaration of Barnaby Gowrie in Support of the Motion to Dismiss on or about April 15, 2016.

3

## II. RELEVANT FACTS[3]

### A. THE VOLUNTARY LIQUIDATION OF THE FUNDS

On July 1, 2014, the shareholders and managers of each of the Funds voted to initiate the liquidation of their respective Funds.[4] As a result, the Funds hired Wright and Kennedy to serve as Joint Voluntary Liquidators.[5] Wright and Kennedy and the Funds then hired TMC to provide consulting services for the Funds during the liquidation process.[6]

### B. THE CONSULTING AGREEMENT

On July 1, 2014, TMC entered into the Consulting Agreement with Wright and Kennedy and each of the Funds.[7] The parties re-executed the Consulting Agreement on October 15, 2014.[8] The preamble to the Consulting Agreement identifies Wright and Kennedy, TMC, and the Funds as the parties to the Consulting Agreement.[9] The three are separately identified by Roman numeral.[10] The preamble states:

> THIS AMENDED AND RESTATED CONSULTING AGREEMENT is made and entered into as of October 15, 2014, pursuant to section 10 of that certain Consulting Agreement dated July 1, 2014, by and between, (i) MATTHEW WRIGHT and CHRISTOPHER KENNEDY of RHSW (Cayman) Limited (**"RHSW"**), the Joint Voluntary Liquidators (collectively, the **"Liquidators"**) of the funds (each a **"Fund"**, and collectively the **"Funds"**) and their respective operating companies (each an **"Operating Company"**, and collectively the **"Operating Companies"**) set forth in Exhibit A hereto, (ii) TMC CONSULTING SERVICES, LLC, a Delaware limited liability company (the **"Consultant"**), and (iii) each of the Funds.[11]

---

[3] Unless otherwise indicated, the following are the Relevant Facts as alleged in the Complaint. For purposes of the Motion, the Court must view all well-pleaded facts alleged in the Complaint as true and in a light most favorable to TMC. *See, e.g., Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 27 A.3d 531, 536 (Del. 2011); *Doe v. Cedars Acad., LLC*, C.A. No. 09C-09-136 JRS, 2010 WL 5825343, at *3 (Del. Super. Oct. 27, 2010).

[4] Compl. Ex. A, Consulting Agreement p. 1. Exhibit A to the Complaint will be cited to as "Consulting Agreement § __" or "Consulting Agreement p. __" if there is no section specified.

[5] Compl. ¶¶ 2–3.

[6] *Id.* ¶ 13.

[7] Consulting Agreement p. 1.

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] *Id.*

4

The signature page follows a structure of designating the parties separately.[12] Wright and Kennedy, the Funds, and TMC are each listed on the signature page, and each of the three parties signed the Consulting Agreement.[13] First, Wright and Kennedy signed under their names and under the heading "Liquidators."[14] Second, Wright and Kennedy, in their capacity as Joint Voluntary Liquidators, signed on behalf of the Funds.[15] Third, the managing director of TMC signed on behalf of TMC and under the heading "Consultant."[16]

The notice provision, section 19, of the Consulting Agreement appears to be similarly structured.[17] Wright and Kennedy, the Funds, and TMC are each entitled to receive any notices sent by another party.[18] Section 19 provides:

> Notice to the CONSULTANT shall be sent to:
>     TMC Consulting Services, LLC
>     5619 DTC Parkway, Suite 800
>     Greenwood Village, Colorado, 80111
>     Attn: Robert Walker
>
> Notice to LIQUIDATORS and the Funds shall be sent to them:
>     c/o RHSW (Cayman) Limited
>     Windward 1 Regatta Office Park
>     P.O. Box 897
>     Grand Cayman, KY1-1103
>     Cayman Islands
>     Attn: Matthew Wright and Christopher Kennedy[19]

The Consulting Agreement further states that none of the foregoing parties may act as an agent for another party under the Consulting Agreement.[20] Section 14 states: "Nothing herein contained shall be deemed to authorize or empower any party to act as agent for another party to

---

[12] Consulting Agreement p. 9.
[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] Consulting Agreement § 19.
[18] *Id.*
[19] *Id.*
[20] Consulting Agreement § 14.

this Agreement, or to conduct business in the name, or for the account, of the other party to this Agreement."[21]

The Consulting Agreement goes on to provide that the contract term would continue in effect until December 31, 2015 and after that from year-to-year.[22] However, the parties could terminate the Consulting Agreement under certain circumstances.[23] Section 9(c) of the Consulting Agreement provides:

> (c)    Notwithstanding the foregoing, this Agreement may be earlier terminated as follows: (i) by either the LIQUIDATORS or the CONSULTANT (A) upon the breach of this Agreement by another party if such breach is not cured within 30 calendar days of written notice of such breach to the breaching party, or (B) the final dissolution of all of the Funds, (ii) by the LIQUIDATORS upon 30 calendar days notice to the CONSULTANT if the LIQUIDATORS' office as liquidators to each of the Funds shall cease, or (iii) automatically without further action by any party, in the event that one or more parties other than the Liquidators are appointed as the Joint Voluntary Liquidators to the Funds.[24]

Based on this section, on June 3, 2015, Wright and Kennedy informed TMC that TMC breached its obligations under the Consulting Agreement by making an unauthorized expenditure of funds.[25] Wright and Kennedy and the Funds then notified TMC of their intent to terminate the Consulting Agreement.[26] This prompted TMC to file the Complaint against Wright and Kennedy and the Funds.[27] TMC claims that Wright and Kennedy and the Funds should have provided TMC thirty days to cure its alleged breach before terminating the Consulting Agreement.[28]

---

[21] *Id.*
[22] Consulting Agreement § 9(a)-(b).
[23] *Id.* at § 9(c).
[24] *Id.*
[25] Compl. ¶ 16.
[26] *Id.*
[27] *Id.* at ¶ 21.
[28] *Id.* at ¶¶ 16–18.

6

**C.      THE CAYMAN ISLANDS COURT-SUPERVISED LIQUIDATION PROCEEDINGS**

On March 5, 2015, Wright and Kennedy filed a petition (the "Petition") in the Grand Court of the Cayman Islands (the "Grand Court").[29] The Petition asked the Grand Court to oversee the liquidation of two of the Cayman Islands Funds, Madison Niche Opportunities Fund, Ltd. ("Madison Opportunities Fund") and Madison Niche Assets Fund, Ltd. ("Madison Assets Fund").[30] Wright and Kennedy filed the Petition five months after the parties executed the Consulting Agreement, but before TMC's alleged breach.[31]

On March 11, 2015, the Grand Court granted the Petition.[32] The Grand Court then appointed Wright and Kennedy to serve as Joint Official Liquidators of the two Funds.[33] To date, Madison Opportunities Fund and Madison Assets Fund are the only two Funds in official court-supervised liquidation with Wright and Kennedy acting as Joint Official Liquidators.[34] The other four Funds remain in voluntary non-court-supervised liquidation with Wright and Kennedy serving as Joint Voluntary Liquidators.[35]

**D.      CHAPTER 15 PROCEEDINGS**

On January 6, 2016, Madison Opportunities Fund and Madison Assets Fund sought relief under Chapter 15 of the United State Bankruptcy Code in the U.S. Bankruptcy Court for the

---

[29] *Decl. of Christopher Kennedy in Support of Mot. to Dismiss* Ex. 1, Supervision Orders. Ex 1 will be cited as "Grand Court Supervision Orders p. __". The Grand Court Supervision Orders are the only part of the Declaration that the Court has considered in ruling on the Motion. The Declaration itself meets none of the requirements for admitting extrinsic evidence on either a 12(b)(1) or 12(b)(6) motion. *See Vanderbilt Income Growth Assoc. v. Arvida/JMB Managers*, 691 A.2d 609 (Del. 1996); *Adkins v. Rumsfeld*, 450 F. Supp. 2d 440 (D. Del. 2006). Additionally, much of the Declaration consists of unsupported, conclusory statements. *See Ramunno v. Crawley,* 705 A.2d 1029, 1034 (Del. 1998). The Court is therefore permitted to set aside the Declaration when rendering this opinion.
[30] Grand Court Supervision Orders p. 1.
[31] *See id.*
[32] *Id.*
[33] *Id.* at p. 2.
[34] *See id*. at p. 1.
[35] *See id.*

7

District of Delaware (the "Bankruptcy Court").[36] Wright and Kennedy filed the petitions on behalf of these two funds.[37] The Chapter 15 cases seek to have the Bankruptcy Court recognize the Cayman Islands liquidations of Madison Opportunities Fund and Madison Assets Fund.[38] On March 1, 2016, the Bankruptcy Court entered an Order Granting Recognition and Relief in Aid of a Foreign Main Proceeding Pursuant to Section 1504, 1509, 1515, 1517, 1520, and 1521 of the Bankruptcy Code (the "Recognition Order").[39] Section 4 of the Recognition Order states:

> 4.      **ORDERED**, that all persons and entities (other than the Official Liquidators and their expressly authorized representatives and agents) are hereby enjoined, except as provided in 11 U.S.C. §§ 555 through 557, 559 through 562, 1520 and 1521 or as modified herein, from:
>
> (1) executing against the Funds' property or assets;
>
> (2) taking or continuing any act to obtain possession of, or exercise control over, the Official Liquidators (with respect to the Funds), the Funds, or any of the Funds' property or assets;
>
> (3) taking or continuing any act to create, perfect or enforce a lien or other security interest, set-off or other claim against the Official Liquidator (with respect to the Funds), the Funds or any of the Funds' property or assets as of the date of the filing of the Petition, or otherwise seeking the issuance of or issuing any restraining notice or other process or encumbrance with respect to the Funds or any of the Funds' property or assets; and
>
> (4) transferring, relinquishing, or disposing of any property of the Funds to any person or entity other than the Official Liquidators [40]

Despite the foregoing limitations, the Recognition Order expressly acknowledges the existence of this civil action and that this civil action could proceed.[41] The Recognition Order additionally provides:

---

[36] *See* Defs.' Letter dated Mar. 4, 2016.
[37] *Id.*
[38] *Id.*
[39] *Id.* Ex. A, Order.  Exhibit A to the Defendants' Letter dated March 4, 2016 will be cited as the Bankruptcy Court Recognition Order § __".
[40] Bankruptcy Court Recognition Order § 4.

> [I]n the event an application by TMC to the Grand Court to lift the Cayman Stay is denied by the Grand Court ("Cayman Stay Denial Order") the Official Liquidators do not waive any rights whatsoever to seek recognition and enforcement of the Cayman Stay Denial Order in this Court or the Delaware Superior Court and TMC does not waive any right to contest such recognition or enforcement.[42]

TMC petitioned the Grand Court to lift the stay on these proceedings.[43] On May 24, 2016, the Grand Court ordered that TMC be granted leave to continue its litigation against Madison Opportunities Fund and Madison Assets Fund.[44]

### III. PARTIES' CONTENTIONS

Wright and Kennedy move to dismiss the Complaint pursuant to Superior Court Civil Rules 12(b)(6) and 12(b)(1) of the Superior Court Civil Rules ("Civil Rule __").[45] In support of dismissal under Civil Rule 12(b)(6), Wright and Kennedy first argue that TMC cannot maintain a breach of contract claim against them individually. Wright and Kennedy argue that they were acting solely in their representative capacities as Joint Voluntary Liquidators and agents of the Funds under the contract. Even if they were operating in their representative capacities, however, Wright and Kennedy next claim that TMC still fails to state a claim against them. Wright and Kennedy reason that they are entitled to qualified immunity for their actions undertaken as Joint Voluntary Liquidators on behalf of the Funds as part of the Funds' liquidation.

Finally, in support of dismissal under Civil Rule 12(b)(1), Wright and Kennedy argue that the *Barton* doctrine divests the Court of subject matter jurisdiction to hear the case. Because

---

[41] *Id.* § 5.

[42] *Id.* § 10.

[43] At oral argument held on October 3, 2016, the Court asked the parties what, if any, action had been taken in the Grand Court to lift the stay on these proceedings. Counsel for TMC provided to the Court copies of the Grand Court Orders granting leave to continue these proceedings. The Orders provided to the Court will be cited as "Grand Court Orders Granting Leave to Continue § __".

[44] Grand Court Orders Granting Leave to Continue § 1.

[45] Del. Super. Civ. R. 12(b)(1), 12(b)(6).

9

two of the Funds are in official liquidation in the Cayman Islands, Wright and Kennedy argue that TMC must first obtain approval of the Grand Court before pursuing any action that could affect the Funds' assets.

In response, TMC argues that Wright and Kennedy executed the Consulting Agreement in both their individual and representative capacities and are capable of being bound individually. TMC also contends that Wright and Kennedy are not protected by qualified immunity because Wright and Kennedy were not acting as court-supervised liquidators at the time the parties entered the Consulting Agreement. Finally, TMC avers that it need not obtain prior approval of the Grand Court because this litigation, and any relief ordered against Wright and Kennedy by the Court, has no impact on the Grand Court liquidation proceedings. TMC maintains that the Court possesses jurisdiction to hear its claim.

## IV. LEGAL STANDARD

Upon a motion to dismiss under Civil Rule 12(b)(6), the Court (i) accepts all well-pleaded factual allegations as true, (ii) accepts even vague allegations as well-pleaded if they give the opposing party notice of the claim, (iii) draws all reasonable inferences in favor of the non-moving party, and (iv) only dismisses a case where the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances.[46] However, the Court must "ignore conclusory allegations that lack specific supporting factual allegations."[47]

The Court will dismiss an action under Civil Rule 12(b)(1) if the record, which may include evidence outside the pleadings, demonstrates that the Court does not have subject matter jurisdiction over the plaintiff's claims.[48] The plaintiff bears the burden of establishing subject

---

[46] *See Central Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 227 A.3d 531, 536 (Del. 2011); *Doe v. Cedars Academy,* No. 09C-09-136, 2010 WL 5825343, at *3 (Del. Super. Oct. 27, 2010).
[47] *Ramunno v. Crawley,* 705 A.2d 1029, 1034 (Del. 1998).
[48] *See, e.g., Pitts v. City of Wilm.*, C.A. No. 4166—VCP, 2009 WL 1204492, at *5 (Del. Ch. Apr. 27, 2009).

matter jurisdiction, and "where the plaintiff's jurisdictional allegations are challenged through the introduction of material extrinsic to the pleadings, [the plaintiff] must support those allegations with competent proof."[49]

## V. DISCUSSION

### A.  WHETHER WRIGHT AND KENNEDY ARE INDIVIDUALLY LIABLE

The main issue raised in the Motion is whether Wright and Kennedy are bound in their individual capacities under the Consulting Agreement.  In making this determination, the Court must analyze the Consulting Agreement in its entirety.[50]

Wright and Kennedy argue that they executed the Consulting Agreement as Joint Voluntary Liquidators and agents of the Funds during its liquidation.  The title of Joint Voluntary Liquidator is statutorily defined in the Cayman Islands Companies Law (the "Companies Law").[51]  Sections 116-129 of the Companies Law apply to the voluntary winding up of a company.[52]  Section 119 states that "[o]ne or more liquidators shall be appointed for the purpose of winding up the company's affairs and distributing its assets."[53]  The Funds and Wright and Kennedy enlisted TMC's consulting services for the purpose of facilitating the liquidation process.[54]  Therefore, Wright and Kennedy argue that they executed the Consulting Agreement in compliance with their statutory duties under the Companies Law.  Wright and Kennedy maintain that they may not now be sued individually for these acts performed on behalf of the Funds.

---

[49] *Id.*
[50] *See Bonnant v. Merill Lynch, Pierce, Fenner & Smith, Inc.*, 467 Fed.Appx. 4, 8 (2nd Cir. 2012).
[51] Cayman Islands, Companies Law (2013 revision).
[52] *Id.* §§ 116–129.
[53] *Id.* § 119.
[54] Consulting Agreement p. 1.

11

To further support this argument, Wright and Kennedy rely on the language in the Consulting Agreement. The preamble to the Consulting Agreement defines Wright and Kennedy by their statutory title of "Joint Voluntary Liquidators."[55] The Consulting Agreement also consistently refers to Wright and Kennedy as the "Liquidators."[56] Finally, while Wright and Kennedy signed the signature page twice, they signed once under the heading "Liquidators" and a second time above the title of "Joint Voluntary Liquidator."[57]

Based on these repeated references to Wright and Kennedy as liquidators, Wright and Kennedy analogize their case to *Pennsylvania House, Inc. v. Kauffman's of Delaware*, *Inc.*[58] In *Pennsylvania House,* the defendant signed an indemnity agreement on behalf of his partnership, Kauffman's furniture store.[59] The agreement expressly identified the defendant in his representative capacity as an indemnitor six separate times.[60] However, the defendant signed the agreement in his individual capacity, failing to identify himself as Kauffman's agent.[61] The Court refused to find the defendant personally liable, reasoning that the defendant clearly intended to execute the agreement as Kauffman's agent.[62] The Court noted that agents are individually liability in those circumstances where an agent has "expressly or impliedly incurred or intended to incur personal responsibility."[63]

At this stage in the proceedings, the facts of this case seem meaningfully different from *Pennsylvania House* and the typical case of agent liability where an agent contracts *on behalf of*

---

[55] *Id.*
[56] *Id.* p. 1–9.
[57] *Id.* p. 9.
[58] No. 97J-10-039, 1998 WL 442701, at *1 (Del. Super. May 20, 1998).
[59] *Pennsylvania House,* 1998 WL 442701, at *1.
[60] *Id.*
[61] *Id.*
[62] *Id.* at *2.
[63] *Id.*

12

the principal.[64]  Here, the facts indicate that Wright and Kennedy are not merely contracting on behalf of a principal because the principal, the Funds, is a separate party to the Consulting Agreement.[65]  This makes the Consulting Agreement more of a tri-party contract, with Wright and Kennedy, the Funds, and TMC as separate signatories.[66]

*Bonnant v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*[67] presents the same unique factual issue of agent liability in the context of a tri-party contract. [68]  Mr. Bonnant, an attorney, executed an agreement to open a Merrill Lynch Cash Management Account on behalf of his client, Sophin Investments.[69]  The agreement identified three separate parties: (1) Sophin Investments, the "accountholder," (2) Mr. Bonnant, Sophin's "President/Director" and "Representative," and (3) Merrill Lynch, the account provider.[70]  At the end of the agreement, Mr. Bonnant signed his name twice, once in his capacity as his client's authorized representative and once in his individual capacity.[71]  Sophin Investments later initiated arbitration against Merrill Lynch.[72]  Merrill Lynch then named Mr. Bonnant as a third-party defendant.[73]  Mr. Bonnant argued against individual liability because he signed the agreement "in a purely representative capacity on behalf of Sophin and never intended to be bound personally by [the] agreement."[74]

---

[64] *See e.g., American Ins. Co. v. Material Transit, Inc.*, 446 A.2d 1101, 1105 (Del. Super. 1982) (dismissing a breach of contract claim because the defendant was acting as an agent on behalf of a disclosed principal and was therefore not individually liable to a third party).
[65] Consulting Agreement p. 1.
[66] *Id.* p. 1, 9.
[67] 467 Fed.Appx. 4 (2nd Cir. 2012).
[68] *Bonnant*, 467 Fed.Appx. at 1.
[69] *Id*.
[70] *Id.*
[71] *Id.*
[72] *Id.*
[73] *Id.* at 2.
[74] *Id.*

Merrill Lynch moved for summary judgment and to compel arbitration. The district court granted the motion.[75] It held that Mr. Bonnant's two signatures unambiguously indicated that Mr. Bonnant opened the account "in both representative and personal capacities." Mr. Bonnant appealed the district court's decision.[76]

The second circuit vacated the district court's finding.[77] It explained that the district court could only grant a motion for summary judgment if the agreement was unambiguous as to the issue of liability.[78] In determining the question of liability, the second circuit explained that "it is not sufficient to look only at the signature line in isolation."[79] Instead, "what is written on a signature line must be understood in the light of the entire agreement."[80] The second circuit found that the district court erred in relying solely on the signature line in finding individual liability.[81] Moreover, the second circuit held that the signature line, when read in isolation, created an ambiguity as to individual liability.[82] As such, the signature line alone could not be the basis for an unambiguous or unequivocal finding of liability, as is required for a grant of summary judgment on this issue.[83]

Wright and Kennedy thus argue that the language of the Consulting Agreement does not unambiguously establish individual liability. However, Wright and Kennedy overlook two important facts. First, the *Bonnant* court decided the liability issue on a motion for summary judgment. The "unambiguous and unequivocal" standard cited in *Bonnant* is thus relevant on a motion for summary judgment. Here, the Court is not bound by the summary judgment standard

---

[75] *Id.*
[76] *Id.*
[77] *Id.* at 8.
[78] *Id.* at 3.
[79] *Id.*
[80] *Id.*
[81] *Id.*
[82] *Id.* at 4.
[83] *Id.*

14

because this is a motion to dismiss. The Court need only discern whether TMC would not be able to recover under any reasonably conceivable set of circumstances.[84] Second, the *Bonnant* court stated that the issue of liability must be assessed in light of the entire agreement. The Court should not simply look to the provisions cited by Wright and Kennedy when ruling on the Motion.

Thus, in analyzing the Consulting Agreement in its entirety, the Court finds that there is at least an argument that Wright and Kennedy incurred personal liability. The Consulting Agreement clearly denotes Wright and Kennedy as a party, separate and distinct from the Funds.[85] Wright and Kennedy then chose to sign the Consulting Agreement twice.[86] While Wright and Kennedy's first signature appears below the heading "Liquidators," this was a definition with no accompanying designation of their representative capacity or who they represented.[87] Had Wright and Kennedy not intended to be named individually, they could have simply signed on behalf of the Funds as liquidators, as they did in the second signature block, without risking personal liability.

Additionally, in numerous other sections throughout the Consulting Agreement, Wright and Kennedy are identified as separate from the Funds. In section 19, Wright and Kennedy *and* the Funds are each entitled to receive notice of any action taken by another party.[88] In sections 2(a), 3(a), and 4(c), Wright and Kennedy must cause the Funds to perform specific duties, such as "cause the Funds to indemnify" TMC, "cause the Funds to pay" TMC its aggregate monthly

---

[84] *See Central Mortg. Co.* 227 A.3d at 536; *Doe,* 2010 WL 5825343, at *3.
[85] Consulting Agreement p. 1.
[86] *Id.* p. 9.
[87] *Id. See also F.D.I.C. v. Woodside Const., Inc.* 979 F.2d 172, 175 (9th Cir. 1992) ("The manner in which Galt signed the promissory note bound him as an endorser in his individual capacity. He signed the note under the corporate name with the designation of his representative capacity. He also signed the note above the corporate name with no designation of any representative capacity. It is this latter signature that creates Galt's liability.")
[88] Consulting Agreement § 19.

15

fee, and "cause the Funds to reimburse" TMC for certain expenditures.[89] Wright and Kennedy had specific roles under the Consulting Agreement that were separate from those of the Funds. If Wright and Kennedy were acting as representatives, their roles, duties, and rights would be no different than the Funds'.

The Court notes, however, that the Consulting Agreement does not impose individual responsibilities on Wright and Kennedy in section 9 — the section at issue in this litigation.[90] Section 9 references only Wright and Kennedy and TMC and their rights and responsibilities in the event of a breach of the Consulting Agreement.[91] Wright and Kennedy argue that section 9 does not use any language inconsistent with Wright and Kennedy's role as an agent of the Funds. This argument against individual liability is plausible and, after some discovery, may be the basis for judgment in favor of Wright and Kennedy. However, the record before the Court as it pertains to this argument is too undeveloped to provide a basis for granting the Motion at this stage in the litigation.[92]

Section 14 of the Consulting Agreement provides another basis for denying the Motion. Section 14 states that "Nothing herein contained shall be deemed to authorize or empower any party to act as agent for another party to this Agreement, or to conduct business in the name, or for the account, of the other party to this Agreement."[93] This appears to be "boilerplate" language and may not ultimately create an issue. Moreover, if Wright and Kennedy (solely in their capacity as representatives from the Funds) and TMC are determined to be the only parties to the Consulting Agreement, section 14 would have little impact on the issue of liability.

---

[89] *Id.* §§ 2(a), 3(a), 4(c).
[90] *Id.* § 9.
[91] *Id.*
[92] *Canadian Commercial Workers Indus. Pension Plan v. Alden*, No. 11-84N, 2006 WL 456786, at *10 (Del. Ch. Feb. 22, 2006) (denying a motion to dismiss because the issue was one of fact and one that could not be resolved on the undeveloped record before the court).
[93] Consulting Agreement § 14.

However, there are three separate parties to the Consulting Agreement. Consequently, the Consulting Agreement expressly forecloses the possibility of Wright and Kennedy, a party to the Consulting Agreement, from acting as an agent of the Funds, another party to the Consulting Agreement, with respect to this agreement.

The Court agrees with the *Bonnant* court's reasoning that one of the foregoing provisions, on its own, may be an insufficient basis to support a finding of individual liability.[94] However, *Bonnant* also makes clear that the Court must analyze the Consulting Agreement in its entirety.[95] In so doing, the Court finds that the foregoing provisions of the Consulting Agreement, in combination, create a potential basis for imposing individual liability on Wright and Kennedy. Therefore, the Court cannot — drawing all reasonable inferences in favor of the nonmoving party — hold that TMC would not be entitled to recover under any reasonably conceivable set of circumstances at this early stage in the proceedings.

This is not to say that the Court is foreclosed from resolving this issue prior to trial once the parties develop the record through discovery. On the contrary, if the parties engage in discovery, the Court may be in a better position to resolve the issue of liability. The Court cannot, however, based on the record before it, dismiss the breach of contract claim against Wright and Kennedy.

B.   **WHETHER QUALIFIED IMMUNITY EXTENDS TO QUASI-JUDICIAL OFFICERS LIKE LIQUIDATORS**

Wright and Kennedy next argue that liquidators, as quasi-judicial officers, are entitled to qualified immunity for actions performed in the scope of their duties as liquidators. Wright and Kennedy's immunity argument, however, presupposes that they did not execute the Consulting

---

[94] See *Bonnant*, 467 Fed.Appx. 6 (explaining that a corporate representative does not make himself liable on the corporation's contract merely by signing twice).
[95] *Id.* at 3.

Agreement in both individual and representative capacities. As previously discussed, the Court is not in a position, based on the record before it, to determine this issue on a motion to dismiss.

Even if it were, the Court is not persuaded that judicial immunity extends to Wright and Kennedy in these circumstances. Generally, court-appointed trustees and receivers are entitled to immunity for actions taken in the scope of their duties.[96] This means that a trustee is not personally liable on contracts entered into on behalf of the estate.[97] This rule allows a court to shield a trustee from personal liability for actions undertaken at the directive of the court.[98]

Under this theory, the judicial immunity offered to bankruptcy trustees does not extend to Wright and Kennedy. Wright and Kennedy are liquidators in the Cayman Islands. They are not bankruptcy trustees appointed by a U.S. court. Wright and Kennedy do not cite to a single case in which a court has extended judicial immunity to liquidators serving in a foreign court. Instead, Wright and Kennedy argue that public policy justifies extending immunity to "all such quasi-judicial officers" so that they may responsibly wind up a company without fear of personal liability.[99]

However, even if the Court were to adopt such policy rationales, Wright and Kennedy were not acting as court-appointed liquidators when they executed the Consulting Agreement on October 15, 2014.[100] Wright and Kennedy were voluntary liquidators appointed by the shareholders and members of the Funds.[101] The Grand Court did not appoint Wright and Kennedy as official liquidators, who would operate under the Grand Court's supervision, until

[96] *In re J&S Properties, LLC*, 545 B.R. 91, 105 (Bankr. W.D.P.A. 2015); *In re Smith*, 400 B.R. 370, 377–80 (Bankr. E.D.N.Y. 2009) (citing *In re Center Teleproductions, Inc.*, 112 B.R. 567, 578 (Bankr. S.D.N.Y. 1990)).
[97] *In re Lickman*, 297 B.R. 162, 204 (Bankr. M.D. Fla. 2003); *In re Markos Gurney P'ship*, 182 B.R. 211, 217 (Bankr. N.D. Ill. 1995) (citations omitted); *In re Rollins*, 175 B.R. 69, 77 (Bankr. E.D. Cal. 1994).
[98] *See Lonneker Farms, Inc. v. Klobucher*, 804 F.2d 1096, 1097 (9th Cir. 1986) (explaining that a bankruptcy trustee acting under the authority of the bankruptcy judge is entitled to immunity because "he is performing an integral part of the judicial process").
[99] Def's Mot. at 15.
[100] *See* Consulting Agreement p. 1.
[101] *See id.*

March 11, 2015.[102] Even then, Wright and Kennedy were official liquidators for only two of the six Funds.[103]

Wright and Kennedy argue that the relevant inquiry is their status as of June 3, 2015, the day they decided to terminate the Consulting Agreement. On that date, Wright and Kennedy were operating as Official Liquidators. However, the entire basis for personal liability — and the entire basis for the Motion — stems from Wright and Kennedy's actions at the time the parties signed the Consulting Agreement. At that time, Wright and Kennedy were not under the supervision of the Bankruptcy Court or the Grand Court when winding up the Funds. Therefore, even if Wright and Kennedy were acting solely in their representative capacities, judicial immunity is not a basis for dismissing the breach of contract claim.[104]

## C.     WHETHER THE *BARTON* DOCTRINE APPLIES AND DIVESTS THE COURT OF JURISDICTION

The final basis for Wright and Kennedy's Motion is that the Court lacks jurisdiction to hear the claim pursuant to the U.S. Supreme Court's decision in *Barton v. Barbour*.[105] The Court must determine whether the policy considerations underlying the *Barton* doctrine are implicated in this case.

The *Barton* doctrine provides that, before suit is brought against a receiver in another forum, a plaintiff must obtain leave of the court that appointed the receiver.[106] The justification for this rule is to ensure that receivership property is consistently and equitably administered.[107]

---

[102] Grand Court Supervision Orders p. 1.
[103] *See id.*
[104] Wright and Kennedy also allege that they are entitled to statutory immunity under the Delaware Limited Liability Company Act, which codifies the immunity applicable to liquidating trustees. Del. Code Ann. tit. 6 § 18 (2016). This argument similarly presupposes that Wright and Kennedy did not execute the Consulting Agreement in both individual and representative capacities. The Court again stresses that it cannot decide this issue on the record before it, and in so holding, does not find the statutory immunity argument to be a valid basis for dismissing the breach of contract claim at this point in the litigation.
[105] 104 U.S. 126 (1881).
[106] *Barton,* 104 U.S. at 128.
[107] *Id.* at 128–29.

Because any judgment against a receiver would be satisfied out of receivership property, the *Barton* doctrine seeks to prevent a plaintiff's claim from superseding the claims of a creditor.[108]

Circuit courts have since extended *Barton* to apply to other court-appointed officers such as trustees.[109] However, for the *Barton* doctrine to apply, a plaintiff must bring suit against a trustee or receiver for acts done in the trustee or receiver's official capacity.[110] Failure to obtain leave of the appointing court in this instance may divest another court of jurisdiction to hear a plaintiff's claim.[111]

Wright and Kennedy argue that TMC is required to first obtain leave of the Grand Court, where two of the Funds are in official liquidation, before bringing an action in this Court. Wright and Kennedy assume that any action against them, as liquidators, would disrupt the equitable administration of the assets of Madison Opportunities Fund and Madison Assets Funds. This is not true. TMC is not pursuing an action against Wright and Kennedy for acts performed in their official capacity as liquidators. TMC is suing Wright and Kennedy individually. Any judgment against Wright and Kennedy would be satisfied from their individual assets, not from the assets of Madison Opportunities Fund or Madison Assets Fund. This lawsuit, as it relates to Wright and Kennedy individually, does not affect the liquidation proceedings in the Grand Court.

This conclusion is further supported by the orders issued by the Bankruptcy Court and the Grand Court. In its Recognition Order, the Bankruptcy Court incorporated safeguards to protect

---

[108] *See id.* (explaining that a suit brought without leave to recover judgment is "virtually a suit . . . to take the property of the trust from [the receiver's] hands and apply it to the payment of the plaintiff's claim, without regard to the rights of other creditors or the orders of the court which is administering the trust property").

[109] *See e.g., In re VistaCare Group, LLC*, 678 F.3d 218, 224 (3d Cir. 2012); *Lawrence v. Goldberg*, 573 F.3d 1265, 1269 (11th Cir. 2009); *In re Crown Vantage, Inc.,* 421 F.3d 963, 970 (9th Cir. 2005); *Muratore v. Darr*, 375 F.3d 140, 143 (1st Cir. 2004); *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993).

[110] *VistaCare*, 678 F.3d at 224.

[111] *See In re Summit Metals*, *Inc,* 477 B.R. 484, 494–95 (Bankr. D. Del. 2012) (dismissing claim pursuant to *Barton* because plaintiff's failure to seek leave of the bankruptcy court prior to filing in the New York Supreme Court divested the New York Supreme Court of subject matter jurisdiction).

the Funds' assets, but expressly lifted the stay on litigation in this case.[112] The Grand Court similarly granted TMC's request for leave to continue the proceedings.[113] Had the Grand Court been concerned about the assets in liquidation in its court, it could have denied TMC's request to continue its proceedings against Madison Opportunities Fund and Madison Assets Fund. There is nothing in the record before the Court to indicate that TMC is using the Court or this litigation to circumvent the liquidation process in the Grand Court. Therefore, the Court finds that it maintains jurisdiction over this litigation.

## VI. CONCLUSION

For the foregoing reasons, Wright and Kennedy's Motion to Dismiss is **DENIED**.

**IT IS SO ORDERED.**

/s/ *Eric M. Davis*
Eric M. Davis, Judge

---

[112] Bankruptcy Court Recognition Order §§ 5–6.
[113] Grand Court Orders Granting Leave to Continue § 1.